# Isaac B. Cushwa and others, *vs.* Jno. S. Cushwa and others' Lessee.

A deed fraudulent as to creditors may be impeached by them, but is good
against all others; it cannot be impeached by the parties to the fraud, or
by their representatives or heirs at law.

The grantor in a fraudulent deed cannot rely upon the fraud, either as plaintiff,
claiming relief against the effect of the deed, or as defendant, resisting the
claim of the grantee.

An insolvent debtor, prior to his application, executed a deed of certain lands,
for which the parties claiming under the deed brought ejectment against
the heirs at law of the grantor.  Held :

Cushwa, *et al.*, *vs.* Cushwa's Lessee.

The defendants could not show that the deed of their ancestor was executed in fraud of creditors, in order to set up the defence of an outstanding title in the trustee in insolvency.

The objection that a verdict in an action of ejectment gave $500 *damages*, and that the judgment in accordance therewith is therefore erroneous, cannot, since the act of 1825, be raised in this court, no question upon it having been raised below, and no motion made in arrest of judgment.

Appeal from the Circuit Court for Washington county.

*Ejectment* by the appellees against the appellants for certain lands in Washington county. Plea, *non cul.*, and defence on warrant. The record shows that the defendants appeared, asked leave to ascertain their defence, and took defence as *heirs at law* of Benjamin Cushwa, deceased.

*Exception.* The lands were devised by his father to Benjamin Cushwa, and by him conveyed to his brother, John Cushwa, by deed, dated the 14th of November 1826. The plaintiffs were admitted to be the sole heirs at law of the former, and the defendants of the latter. The defendants then to maintain the issue on their part, and to show an outstanding title, offered, subject to exceptions by the plaintiffs, the proceedings in insolvency upon the application of said Benjamin Cushwa, which show that he petitioned for the benefit of the insolvent laws, and obtained his personal discharge on the 19th of December 1826, having first executed a deed of all his property to his brother John, his duly appointed and qualified trustee; that in March 1847, allegations were filed against him by one of his creditors, charging, among other things, that he executed the deed of the 14th of November 1826, to his brother John, with a view and under the expectation of being and becoming an insolvent debtor, and with intent thereby to give an undue and improper preference to said John, who was one of his creditors, and that of this charge, as well as others, he was, upon trial by jury, found guilty; that said John died before completing his trust, and William Ditto was, on the 9th of April 1849, appointed in his place trustee of said Benjamin, and duly qualified as such.

They further proved that Benjamin was in possession of

these lands from his father's death, anterior to 1826, to his own death, in 1847, always using them as his own; that John resided on the adjoining farm, was a large creditor of Benjamin prior to the latter's application for the benefit of the insolvent laws, and was present at the trial of the allegations above mentioned. They also offered in evidence a single bill of Benjamin to John, for $4689.86, dated March 26th, 1839, and payable on the 5th of April of the same year, upon which judgment was recovered by the plaintiffs, as administrators of John, on the 10th of December 1847. On this judgment certain proceedings were had, which are fully stated in the opinion of this court. The defendants then asked two instructions to the jury, in substance as follows:

1st. If they find that at the time the deed was made by Benjamin to John, the former was in fact insolvent, the latter largely his creditor, and that Benjamin made the deed with the view and under the expectation of being and becoming an applicant for the benefit of the insolvent laws, and with intent thereby to give an undue and improper preference to John as one of his creditors, then the plaintiffs are not entitled to recover, because the deed so made is void and transferred no title to John.

2nd. This prayer leaves to the jury to find all the facts above mentioned, as proved by the defendants, and then asks the court to say the plaintiffs are not entitled to recover, for want of a good and sufficient title in law.

The plaintiffs then prayed the court to reject the testimony offered by the defendants, to establish a fraud in the execution of the deed from Benjamin to John, and to show an outstanding title in William Ditto, because:—1st. It is not competent for said Benjamin, or those claiming under him, to prove his own fraud in avoidance of his own deed. 2nd. An outstanding title in Ditto cannot exist without avoiding this deed for fraud, which it is not competent for the defendants to do.

The court, (PERRY, J.,) granted the instructions asked by the plaintiffs, and refused those of the defendants, and to this ruling the latter excepted. The verdict was for the plaintiffs,

*with* $500 *damages*, and the judgment accordingly.   The defendants appealed.

The cause was argued before LE GRAND, C. J., ECCLE-STON and TUCK, J.

*George Schley* for the appellants.   Our first prayer should have been granted.   The act of 1812, ch. 77, sec. 1, makes the deed absolutely *void*, and not voidable, (7 *G. & J.*, 170, *Dulaney vs. Hoffman.*   6 *H. & J.*, 266, *Harding vs. Stevenson.* 1 *Md. Rep.*, 469, 475, *Waters vs. Dashiell.*   5 *H. & J.*, 403, *Kennedy vs. Boggs.*   7 *Gill*, 404, 405, *Gardner vs. Lewis.* 5 *H. & J.*, 478, *Harding vs. Hull*,) and if it be *void*, it may be assailed by any party whose rights are affected by it in any proceeding in which its validity is asserted.   1 *Md. Rep.*, 39, *Key's Lessee, vs. Davis.*   We do not claim *as heirs at law*, but simply rely upon our possession, and the plaintiffs must get us out in a legal manner.   Our defence is a paramount *outstanding title* in William Ditto, the trustee of Benjamin Cushwa.   But it is said we cannot set up this defence because Cushwa could not do it.   This might be a fatal objection if we were claiming as *his heirs at law*, but this we are not doing; we rely simply upon our possession.   The plaintiffs in ejectment must recover upon the strength of their own title, and the defendants can rebut the *prima facie* case made out by them, by showing the real title to be in another.   *Adams on Eject.*, 29.   1 *Md. Rep.*, 52, *Mitchell's Lessee, vs. Mitchell.* We do not claim under the fraudulent deed, on the contrary we show the title to be out of us, and get no benefit from it *as heirs at law*.   The outstanding title must be such in a third party as will enable him to recover against either party to the suit.   1 *Md. Rep.*, 234, *Georges Creek Coal and Iron Co., vs. Detmold.*   2 *H. & J.*, 125, *Hall vs. Gittings*.   The allegations against Cushwa were found against him, and the judgment in those proceedings is analogous to a judgment *in rem*, and is good against the world.   But if the deed be voidable, it may be impeached by the heirs of the grantor, and in this

action. 1 *Md. Rep.*, 40, *Key's Lessee, vs. Davis. Dorsey on Ejectment*, 31. 6 *H. & J.*, 280, *Hurn vs. Soper.* Ibid., 255, *Lamborn vs. Watson.* 1 *H. & J.*, 370, *Garretson vs. Cole.* 2 *H. & J.*, 455, *Boreing's Lessee, vs. Singery.* 7 *G. & J.*, 132, *Stewart vs. Iglehart.* This is not the case of an heir at law, seeking to avoid the deed of his ancestor for fraud, but of parties relying upon their possession, and this constitutes the distinction between this case and those cited on the other side.

But the judgment is erroneous, because it gives $500 *damages.* 2 *Har. Ent.*, 341. 9 *Gill*, 244, *Cushwa vs. Cushwa. Dorsey on Eject.*, 105. 2 *Greenlf. on Ev.*, sec. 336.

*Wm. Price* for the appellees. The entry of the judgment for $500 damages is a mere clerical error which this court can correct. 7 *G. & J.*, 78, *Kent vs. Lyles.* 8 *G. & J.*, 132, *Robey vs. Turner.* But there was no point made upon it below, no motion in arrest of judgment, and of course it is not open here since the act of 1825, ch. 117.

The parties to the deed of 1826 were Benjamin Cushwa, grantor, and John Cushwa, his brother, grantee. The parties to this suit are the heirs at law of the grantee against the heirs at law of the grantor. The question then is, whether Benjamin Cushwa, or those claiming under him, can set up the defence that his deed was fraudulently executed? The authorities are clear that it cannot be done. 7 *G. & J.*, 136, *Stewart vs. Iglehart.* 4 *Mass.*, 357, *Drinkwater vs. Drinkwater.* 3 *Mass.*, 576. 4 *Randolph*, 370, *Starke's Exc'r, vs. Littlepage.* 6 *Gill*, 32, *Freeman vs. Sedwick.* Here the heirs of Benjamin Cushwa are saying that he made the deed in fraud of creditors. Can they be heard in a court of justice in setting up such a defence? In every case where courts have decided that they will relieve against fraudulent deeds, it is where the fraud has been perpetrated upon the grantor, he himself having clean hands. The appellees came into possession as heirs at law; but suppose they are mere tort-feasors. Their adversary possession then commenced after the death of Benjamin

Cushwa, in 1846, and if they attempt to show the deed to be void, they repudiate their character as trespassers. They cannot impeach it collaterally.    1 *Md. Rep.*, 37, *Key's Lessee, vs. Davis.    6 H. & J.*, 204, *Barney vs. Patterson.*

The trespassers are seeking to accomplish what belongs to creditors, and no one else.    Creditors alone can vacate the deed, and its validity cannot be affected by any proceeding under the insolvent laws, unless the proceeding in which its validity is raised be itself a proceeding under the insolvent laws, and intended to administer those laws.

ECCLESTON, J., delivered the opinion of this court.

This is an action of ejectment to recover certain lands in Washington county, instituted by the appellees against the appellants.

It is admitted that John Cushwa, the elder, died seized of these lands, having executed his will devising them to his son Benjamin, who took and held the same under the devise; that on the 14th day of November 1826, Benjamin executed a deed to his brother, John Cushwa, for these lands.

It appears in proof, that on the 26th of March 1839, Benjamin gave to his brother John a single bill for $4689.86, on which, after the decease of John, his administrators obtained judgment, and shortly afterwards Benjamin died, leaving the appellants, Isaac B. Cushwa, Ann E. Cushwa and Sarah Troup, his heirs at law.    After the decease of Benjamin a *scire facias* against his heirs and terre-tenants issued upon the judgment, and a *fiat* was rendered thereon against the appellants.    Under a *fi. fa.* upon this *fiat* the lands in controversy were sold, and the appellees purchased them; which sale was set aside on motion and a second *fi. fa.* issued.    Under this writ the appellees became the purchasers at the price of $50. A motion was made to set aside this sale also, which motion was pending at the trial of this cause below.

The defendants offered in evidence the proceedings upon the application of Benjamin Cushwa as an insolvent petitioner, which commenced on the 19th of December 1826.    The ob-

7    v.5

ject of this offer was to show the time of the application, the appointment of John Cushwa as trustee, and the deed from Benjamin to John conveying his property to him as trustee; that the deed of the 14th November 1826 was in fraud of the creditors of Benjamin, having been executed by him with a view and under the expectation of becoming an insolvent petitioner, and that after the death of John, William Ditto was appointed trustee in his place.

It is admitted that the plaintiffs, John S. Cushwa and Elizabeth Brewer, (wife of the plaintiff, David Brewer,) are the children and only heirs at law of John Cushwa, the brother of Benjamin.

The plaintiffs claim under the deed of the 14th November 1826. The defendants say that deed is *void*, and the title of Benjamin passed under the insolvent proceedings to John, as trustee; and that after his decease, upon the appointment of William Ditto as trustee in the place of John, the title vested in the new trustee.

A deed which is fraudulent against creditors may be impeached for their benefit, but it is good against all others. See the opinion C. J. Taney, in *White, Warner & Co., vs. Winn and Ross*, cited in 8 *Gill*, 501. Such a deed cannot be successfully impeached by the parties to the fraud, or by their representatives or heirs at law.

The defendants do not pretend to be creditors of Benjamin Cushwa. Nor do they show any title in themselves by adverse possession for twenty years or by any other means, but profess to rely simply upon being in possession at the institution of the suit, and insist that there is an outstanding title in Wm. Ditto, which is sufficient to prevent the plaintiffs from maintaining this action. It is also insisted *in argument* on the part of the defendants, that they make no claim or defence as heirs at law of Benjamin Cushwa. This position is obviously taken for the purpose of avoiding coming in conflict with the principle which denies, not only to the party himself, the right to impeach his own deed for fraud in which he was a participant, but also to those claiming under him adversely to the deed. To allow such a defence as this under the circum-

stances of this case, would be a virtual repeal of the principle just stated. The defendants do not exhibit a shadow of title; it is admitted they are, in fact, the heirs at law of Benjamin Cushwa, who executed the deed of the 14th of November 1826, under which the plaintiffs claim; and the only proof in defence is offered with the express design of showing that deed was a fraud upon the creditors of the grantor.

The law so much abhors fraud and the courts have so pertinaciously refused to suffer a party, or those claiming under him, to reap any benefit from his fraudulent transaction when the fraud is attempted to be set up, that we should feel ourselves to be violating wise and salutary principles, well settled, were we to sanction the present defence. The courts have repeatedly declined to suffer a grantor to rely upon the fraud, when, as plaintiff or complainant, he is claiming relief against the effect of his deed, or when, as defendant, he is resisting the claim of the grantee. The case of *Stewart vs. Iglehart*, 7 *G. & J.*, 132, is one of the latter class of cases; and that of *Freeman and Sedwick, vs. Sedwick*, 6 *Gill*, 29, is one of the former class.

In *Stewart vs. Iglehart*, the court allowed the children of Maria Stewart, one of the grantors, to impugn the deed only because she did not participate in the fraud and was herself imposed upon; whilst the deed was allowed to have full force and effect against her husband, Joseph Stewart, the fraudulent grantor, although he relied upon the fraud as a ground of defence. And notwithstanding Iglehart was held, in consequence of having notice, as standing in regard to his mortgage from Richard Stewart in the same condition which Richard did under the deed from Joseph Stewart and wife, still the complainant, (Iglehart,) obtained a decree for the sale of Joseph's life estate for the payment of the mortgage debt. Thus the grantor's defence, founded upon fraud, was defeated, although it was necessary to sustain the claim against him under the deed in which the grantee participated in the fraud.

In *Freeman and Sedwick, vs. Sedwick*, James Sedwick executed a deed to his brother, Joshua, for the purpose of de-

frauding creditors. Subsequently, an agreement was entered into between the parties, that Joshua should reconvey the property. There was no valid consideration for either instrument. After the death of Joshua, a bill was filed claiming a reconveyance; but the Court of Appeals finally dismissed the bill, because the original contract or deed was fraudulent. Here the claimant, basing his right to relief upon the fraudulent character of the transaction, was defeated. And at the close of their opinion the court say, the case of *Stewart vs. Iglehart* "is conclusive in this." In that we have seen the grantee committing the fraud, could not avail himself of the fraud to defeat the claim of a party who stood in the same relation to the deed, in consequence of notice, as the grantee, who was a *particeps criminis.*

We have examined a number of authorities on this point and they clearly establish the principle, that where a conveyance has been made with a design to defraud creditors, the law will not permit the grantor to set up the fraud for the purpose of avoiding the transfer. See the cases cited in 6 *Gill*, 40, 41.

There are some instances in which a plaintiff may not be able to enforce a fraudulent contract, and where the rule applies, that "*in pari delicto potior est conditio defendentis.*" The application of this rule is treated of by Judge Green, in *Starke's Exc'rs, vs. Littlepage,* 4 *Randolph's Rep.*, 372. He holds that if, for the purpose of frustrating the original design of such transactions, it may be necessary either to enforce such contracts at law or to grant relief against them in equity, it will be done, notwithstanding both the parties are *in pari delicto.* A defendant at law will not be allowed to rely on his own turpitude, nor will a party as plaintiff in equity be prevented from alleging it, if, by refusing to execute the contract at law or by refusing to relieve against it in equity, would have the effect of promoting the original design and of encouraging the making of contracts of like character. On this subject the judge says, "the contract is enforced or avoided both at law and in equity, as may best answer the purpose of discouraging the fraud or contract against the policy of the law;

and it is for this purpose, and not because the defendant is in such cases strictly entitled, on his own account, to be discharged from his contract, that the rule is established that *in pari delicto potior est conditio defendentis;* a rule which, in general, discourages vicious contracts, but which is not enforced when it would counteract this policy of the law." And on page 375, in the same case, it is said, "to allow a fraudulent debtor, conveying his property to another with intent to defraud his creditors, to allege that fraud for the purpose of avoiding the transfer, would be using the maxim of the law to frustrate the policy of that very maxim, by giving full effect to the fraudulent contrivance of the parties, according to their intent, and indeed rather to enforce than to frustrate the fraudulent contract, and debtors might, with perfect impunity, practise frauds upon their creditors." In this opinion many cases on the subject are examined with much ability, and it is said that a fraudulent grantor, under such circumstances, has not been relieved in equity, except in the case of *Austin vs. Winston*, 1 *Hen. and Munf.*, 33, which was decided by a divided court.

The decision in *Starke's Exc'rs, vs. Littlepage* is referred to and approved in *James vs. Bird's Adm'r, 8 Leigh's Rep.*, 512, 513.

In *Doe on Demise of Roberts vs. Roberts, 2 Barn. and Ald.*, 367, the deed under consideration was made in contravention of the policy of the law. The defendant offered evidence to show that the deed was fraudulent, and notwithstanding it was objected to by the plaintiff, the court admitted the proof and the defendant obtained a verdict. The four judges of the King's Bench granted a new trial, and in deciding the rule *nisi* Bayley, J., says: "This defence ought to have had no weight. By the production of the deed the plaintiff establishes a *prima facie* title; and we cannot allow the defendant to be heard in a court of justice to say, that his own deed is to be avoided by his own fraud." And Holroyd, J., says: "A deed may be avoided on the ground of fraud, but then the objection must come from a person neither *party* nor *privy* to it, for no man can allege his own fraud in order to invalidate his own deed,"

A defence in ejectment, based upon an outstanding title in a third party, like any other defence, must be sustained by proof legally admissible in the cause.  Now the proof offered in the present instance to show the outstanding title is in direct violation of an established principle of law.  The defendants wish to prove that the deed of their ancestor was a fraud upon his creditors.  This the law will not permit.  As authorities bearing upon this case, see 6 *H. & J.*, 61, 116.  7 *H. & J.*, 453, and 5 *G. & J.*, 346.

The plaintiffs rely upon a deed, alleging it to be a valid and legal instrument; but it is assailed by the defendants as being fraudulent and void.  Standing in the relation which they do to this transaction, they cannot avail themselves of such a defence, although in argument they profess not to claim the lands as heirs at law of Benjamin Cushwa, or through him in any manner, for the fact is, the record contradicts the allegation that they do not claim through their father.  Their appearance is entered as heirs at law; the permission for them to be admitted as defendants is the same, so likewise is the leave to ascertain their defence, and the defence taken for them by their attorneys is as heirs at law.  All the defendants in these several instances are named as heirs at law except William Cushwa, who is called executor of Benjamin.

Because the verdict gave five hundred dollars damages, it is contended that inasmuch as no such damage could be legally given in an action of ejectment, the judgment is erroneous, although in accordance with the verdict, and therefore should be reversed.  But no question on this subject was raised below, and no motion in arrest of judgment having been made, the act of 1825, ch. 117, will not allow such a question to be raised in this court.

From what has been said it will appear, that we do not think the court below committed any error in refusing the prayers of the defendants or in granting that of the plaintiffs, and therefore the judgment will be affirmed.

*Judgment affirmed.*