Ann M. Snyder, Executrix of Oliver P. Snyder, deceased *vs.* William J. Snyder.

*Bona fides of a Mortgage—Evidence as to Satisfaction of a Mortgage Debt.*

W. J. S. being indebted on judgments and otherwise, to sundry persons in 1866, united with his wife in conveying by way of mortgage a parcel of land to O. P. S. to secure the payment of a sum of money, stated in the mortgage to be due O. P. S. and payable one year after date. The mortgage was duly executed, acknowledged and recorded, and the transaction appeared on its face to be *bona fide.* O. P. S. died in 1875, the mortgage not having been released. In 1876, W. J. S. filed a bill for an injunction to restrain O. P. S's executrix from selling the land, on the ground that the mortgage had been paid. Held.

1st. That if the testimony produced by the complainant be taken as true, it showed a case in which he was a party to a mere colorable transaction made fraudulently to hinder and delay his creditors, and, in such view, he was not entitled to relief in equity.

2nd. That looking at the whole evidence, exclusive of the declarations of O. P. S., the *bona fides* of the mortgage has not been impeached successfully, and the complainant has failed to prove that the mortgage debt had been paid.

Appeal from the Circuit Court for Frederick County, in Equity.

The case is stated in the opinion of the Court.

The cause was argued before Bartol, C. J., Miller, Alvey and Robinson, J.

*William P. Maulsby, Jr.,* for the appellant.

*J. E. R. Wood,* for the appellee.

BARTOL, C. J., delivered the opinion of the Court.

On the 12th day of March, 1866, the appellee, with his wife, executed a mortgage conveying to the appellant's testator a parcel of land containing $40\frac{1}{4}$ acres to secure the payment of $200, with interest from the date of the mortgage, which sum is stated in the mortgage to be then due from the mortgagors to the mortgagee, and was payable in one year thereafter.

After the death of the mortgagee, the appellant, in pursuance of a power of sale in case of default, contained in the mortgage, proceeded to advertise the sale of the property in September, 1876.

Whereupon the appellee filed his bill of complaint praying that the appellant be enjoined from selling the property, and that she be required to release the mortgage, and for general relief.

The bill alleges that "the mortgage has been fully paid and satisfied by the complainant, and the said Oliver P. Snyder repeatedly in his life-time promised to release the same, on the records, which he failed to do, and which his executrix has failed, or refused to do since his death."

The appellant in her answer states upon information and belief, that no part of the mortgage debt was paid to her testator in his life-time, and that he never promised to release the same; and avers that no part thereof has been paid to her; that she has never been requested by William J. Snyder, or by any one in his behalf, to release the same, and that the same is a valid and subsisting claim and lien against the property therein described.

The bill does not charge that there was any fraud on the part of the appellant's testator in obtaining the mortgage, nor is it averred that the mortgage debt was not actually due and owing at the time the paper was executed, the only ground for relief stated in the bill is that the mortgage debt has been paid.

To support this averment, three witnesses were produced by the complainant: *Jacob G. Wood, Thomas U. Lease* and *Elias Mount.*

*Lease* and *Mount* testify to certain declarations made by O. P. Snyder, soon after the mortgage was executed, to the effect that William J. Snyder owed him nothing at the time, but was indebted to several other persons, and to prevent his creditors from selling his property, and to secure him a home the mortgage was executed, and that the sum of $200 mentioned therein as the consideration, was handed by him, the mortgagee, to the mortgagor at the time the paper was delivered, and was immediately handed back.

*Wood,* the other witness, states that he was a constable and had in hand certain judgments against William J. Snyder in January, 1866, and was about to seize and sell his property; these judgments were paid or satisfied by O. P. Snyder; that "the mortgage was taken after the payment of the judgments, because there were other claims against William J. Snyder, and they did not want to sell him out nor did I."

The effect of this witness' testimony is to show that, while the judgments mentioned were paid by *O. P. Snyder,* such payments were made out of funds or means belonging to, or supplied by William J. Snyder, and that O. P. Snyder admitted to the witness that the whole matter had been settled, that William J. Snyder owed him nothing and promised to return to William J. Snyder all the papers including the mortgage. According to *Wood's* testimony the mortgage was given to prevent other creditors of W. J. Snyder from selling his property.

The evidence of these three witnesses cannot be relied on to prove the mortgage debt had been paid, its effect is rather to prove that no mortgage debt ever existed; and that the mortgage was without any *bona fide* consideration, a mere colorable transaction made fraudulently to hinder and delay William J. Snyder's creditors.

This is the effect of the testimony produced by the complainant, if it be taken as true, so far from supporting the allegation made in the bill, it shows a case in which he was a party to the fraud, concocted with the mortgagee, and carried into execution for his own benefit, and being in *pari delicto*, he would not be entitled to relief in a Court of Equity upon his bill. *Roman vs. Mali*, 42 *Md.*, 513.

But we do not accept this theory of the case; looking at the whole evidence as it is disclosed in the record, we think the *bona fides* of the mortgage has not been successfully impeached. It is not proved that there were any other debts due by William J. Snyder, besides those in the hands of Wood, the constable, all of which were paid; the only testimony on this subject is that of Wood, who says there were other debts, but there is no evidence of them nor to whom they were due.

There is no sufficient evidence to prove that the mortgage debt has been paid.

Annexed to the mortgage is the affidavit of Oliver P. Snyder, made at the time the paper was executed stating that "the consideration therein named is true and *bona fide* as therein set forth."

This affidavit was required by law and is entitled to credit, unless contradicted by strong proof. The instrument was placed upon record, on the following day, remained in the hands of the mortgagee, among his valuable papers, till his death which occurred in the spring of 1874, a period of eight years, without being released or its validity questioned by the appellee, until the filing of this bill two years and a half after O. P. Snyder's death, and more than ten years after the date of the mortgage.

No receipts are produced by the appellee, or any evidence of payments, the only testimony offered by him tending to prove that the mortgage was made originally without consideration, and in fraud of his creditors, which

if true would deprive him of all claim to relief in a Court of equity.

It is not easy to say with any degree of certainty, what was the real consideration of the mortgage—Elijah T. Hilton, one of the appellant's witnesses, states that he saw O. P. Snyder pay the money named as the consideration, to William J. Snyder, and the latter put it in his pocket.

While it may be inferred from some parts of Wood's testimony that the mortgage was taken to secure the repayment of money advanced by the mortgagee to satisfy certain claims against Wm. J. Snyder.

It appears that among the papers which were in the possession of O. P. Snyder, produced by the appellant and filed with the Commissioner, are three judgments against Wm. P. Snyder, rendered in January, 1866, amounting to $94.19; these are the judgments which Wood the constable testifies were in his hands for collection, and which were paid to the plaintiff by O. P. Snyder. They have the receipts of the constable thereon, two dated in January, and one on the 2nd of March, 1866.

There was also produced and filed with the Commissioner, a note of Wm. J. Snyder in favor of Henry M. Snyder, dated January 9th, 1863, for $165.15, payable one day after date; this note was also in the possession of O. P. Snyder at the time of his death.

With respect to these judgments and the manner in which they were paid, and also with respect to the note, the testimony of Wood is confused and unsatisfactory; this is not strange when we consider that the witness is testifying from memory, about transactions that occurred more than eleven years before.

He proves, however, and his receipts show, that the judgments were paid by O. P. Snyder. As to the note, the possession of it by O. P. Snyder would seem to indicate that he had paid it also.

The statement of the witness that *Henry M. Snyder* said he owed Wm. J. Snyder over $100, is hardly consistent with the fact that the former held the note of the latter, long over due, for $165.15, and it is alike inconsistent with the other evidence in the cause, showing that William was at the time in straitened circumstances, pressed for the payment of small debts, and about to have his property seized and sold by the constable.

We conclude therefore, that this witness is mistaken in this particular, and also in his recollection as to the way in which the judgments and note were paid.

If paid by O. P. Snyder, out of his own means, as is probable from the testimony, such advances were ample consideration for the mortgage.

The testimony of Wood as to the declarations made by O. P. Snyder that the thing was all settled and he would give his uncle (Wm. J. Snyder) the papers, seems to refer only to the payment of the judgments, the witness says this statement was made "when I gave him the judgments," the mortgage was not executed till some time afterwards.

And in the same manner we think the promises made by O. P. Snyder to give up the papers to William J. Snyder, testified to by this witness, must be understood as referring to the judgments and the notes; for, though the witness says, the mortgage was also included, it seems to us that in this particular he is mistaken. If the mortgage was to be given up, or cancelled, this could not be done by surrendering the original paper, but by receipting the same or entering a release upon the record, and the witness does not say that any receipt or release was mentioned. And when asked the distinct question, 19*th cross-interrogatory,* he says: "I don't recollect his saying after the giving of the mortgage, that Wm. J. Snyder did not owe him anything; the fact is I had very little talk with him after the giving of the mortgage except about his

giving up to William the papers, including the mortgage."

Upon the whole evidence we are of opinion the appellee has failed to prove that the mortgage debt has been paid; the decree of the Circuit Court will be reversed and the bill dismissed.

In disposing of the case we have excluded from our consideration the declarations of O. P. Snyder, testified to by the witnesses, E. T. Hilton and K. D. Hilton, being of opinion that the objections made by the appellee thereto as inadmissible are well taken.

*Decree reversed, and*
*bill dismissed.*

(Decided 25th March, 1879.)


MILLER, J., filed the following opinion:

Upon an examination of the testimony in this record, excluding the declarations of Oliver P. Snyder, I am satisfied the *bona fides* of the mortgage has not been successfully impeached, and that the appellee has failed to prove that the mortgage debt has been paid, and I rest my concurrence in the reversal of the decree upon this ground exclusively.