SALLIE WATTS *vs.* JAMES E. VANSANT, Assignee.

*Validity of Deed—Intoxication—Undue Influence—Grantor Estopped to
Impeach Fraudulent Conveyance.*

A woman alleged that she had been induced to execute a deed while in
such a condition of intoxication as to be incapable of making a valid
deed, and also because of undue influence exerted over her by her at-
torney. *Held*, that the evidence in the case fails to establish the truth
of either allegation.

When a party executes a deed for the purpose of defrauding his creditors
he cannot be allowed to impeach the instrument.

Appeal from the Circuit Court for Prince George's County
(MERRICK, J.)

The cause was argued before McSHERRY, C. J., FOWLER,
BRISCOE, PAGE, BOYD, SCHMUCKER and JONES, JJ.

*C. C. Magruder*, for the appellant.

*Joseph S. Wilson*, for the appellee.

PAGE, J., delivered the opinion of the Court.

On the 29th of December, 1902, James E. Vansant, as-
signee of a mortgage from Sallie Watts to the German Build-
ing Association, under a power contained therein, made sale
of the mortgaged premises and reported the same to the lower
Court. The appellant filed exceptions to its ratification, and the
appellee set up by his answer, among other things, that the ap-
pellant had no standing in Court to file exceptions to the rati-
fication of the sale, because theretofore, that is on the 14th
May, 1900, she, with her late husband, had conveyed all her
interest in the mortgaged premises to one Henry R. Gunther.
On the 11th March, 1903, the parties, then being about to
take testimony in support of the exceptions, agreed in writing
that "the testimony about to be taken, shall only concern"
the matter of the conveyance to Gunther; "because, it is con-
ceded by the counsel for the exceptant, that if the Court shall
decide that she has parted with her equity of redemption in
the Imperial Hotel by the deed to Gunther, the said Sallie
Watts cannot sustain her exceptions on any one of the other
points." The right of appeal to the Court of Appeals was
reserved to either party. It is not disputed that the appellant
did execute the deed in question; but she contends that it is
in fact invalid and inoperative.

The Court below overruled the contention, and dismissed
the exceptions; and from the order of the Court this appeal
was taken.

It is contended on the part of the appellant that the deed is invalid, first, because at the time of its execution she was in such a condition of intoxication as to be incapable of executing a valid deed or contract; secondly, that the deed was ob tained from her by fraud practiced upon her by Gunther, Butke and Bannon, with the view of depriving her "of her right to ever become relieved of the original mortgage," and to "discredit her with her creditors;" and thirdly, because of undue influence, which she was unable to resist, exercised over her by her attorney, James P. Bannon.

The proof undoubtedly shows that Mrs. Watts was much addicted to drink. More than once she had become an inmate of Mount Hope Retreat, seeking there some relief from her unfortunate habit. Dr. Hill, the physician in charge of that institution, testified that her "mind was not at any time impaired," her "*usual*" condition when brought there was such as ordinarily follows a debauch or prolonged intoxication, and that "she improved rapidly when she got rid of the stimulants." She was first received in the institution, on the 20th March 1900, and discharged 13th April, 1900; again on 20th April, 1900, and discharged 10th May, 1900; and again 15th May, and left 30th May, 1900. When she went out of the institution, on the 10th May, "she was sober and normal in her condition," and according to Dr. Hill, "as capable" then of making a valid deed or contract, as at any time of her life. As to her condition from that day up to the 14th when she executed the deed, we have no direct evidence, except what she has testified to herself; that she was drinking "every day," "all the time," "on the 10th May," &c. Her testimony, taking it altogether, does not impress us, and when it is not corroborated in some manner, we cannot place much reliance upon it. Certain it is, that all the persons present at the execution of the deed, who have testified, state that she was entirely capable of attending to the business in which she was engaged. Butke said, she seemed to understand the business and was "just as sound in (mental and physical) health as she is today." She came to Bannon's office voluntarily, and signed her name,

in such an "even and smooth" manner, as to attract the notice
of the learned Judge below, so that in his opinion, as he states;
"her signature alone goes far—to show that there was nothing
wrong with her in mind or body." In this state of the proof,
we cannot hold, that it has been shown, that at the time of the
execution of the deed, she was incapable mentally of making
a valid deed.

The next point made by the appellant is that the deed was
procured by fraud, with the view of depriving her of all her
rights under the original mortgage, that is, the mortgage
under which the sale objected to was made. Of the spe-
cific motive here mentioned, or indeed of any other particular
motive to accomplish a fraud, there is not the slightest evi-
dence. There is no doubt that Mrs. Watts at the time of the
execution of the deed was, and for some time prior thereto
had been, hard pressed by her creditors. She had already
been sued by several of them, and at least a part of her prop-
erty had been seized for overdue taxes. She had also applied
to Mr. Bannon, to devise some plan for her relief. On the
eleventh of May, she came to his office, and they went over
her affairs, with the result that it was determined to place an
additional mortgage on the hotel property and so dispose of
the residue of her property as to "block the creditors," until
further arrangements could be made. Accordingly, on the
14th May, a new mortgage was made to Butke for $3,000,
and this sum was actually paid to Bannon by Butke. The
indebtedness of Mrs. Watts thereafter secured by mortgage
on the hotel property, thus amounted to $5,500, or one thou-
sand dollars in excess of the sale made by the appellant. But
she still retained an equity of redemption, and for the purpose
of futher "blocking" the creditors, that was conveyed to Gun-
ther, who was the brother in law of Butke. For the same
reason, the Whitehouse lot was conveyed to Bannon, after
Mrs. Watts had paid out of the money received from Butke,
to her husband $625, in consideration of his signing the deed,
and thereby parting with his marital rights in the property.
It thus appears that a fraud was contemplated by the parties

concerned in the transaction, but it was not a fraud upon the rights of Mrs. Watts, but upon her creditors. The motive of the transaction was not to deprive Mrs. Watts of any rights she then had, or might thereafter acquire, but to place her property in such a condition that her creditors should be hindered and delayed, in securing their claims. It is no doubt correct that the evidence of most of these transactions and the motives leading up to them, rest upon the testimony of Mr. Bannon, but there is nothing in the record that leads us to reject it, and without some contradictory proof we cannot disregard it. Mr. Bannon further states, that he has settled or is ready to settle with Mrs. Watts, for all property or sums of money which have come into his hands; but whether he has or not, is not material to the inquiries now before us. The transactions of the parties, as it appears from this record, disclose a fraud upon creditors of Mrs. Watts and therefore may be invalid as to them, but for that reason, it cannot be impeached by Mrs. Watts the grantor. The law does not permit the grantor in such a case to set up her own fraud for the purpose of avoiding the transfer. *Cushwa* v. *Cushwa*, 5 Md. 44; *Snyder* v. *Snyder*, 51 Md. 77.

Finally, it is also contended that the deed was procured by undue influence practiced upon her by Bannon, at a time when she was so intoxicated that she was unable to resist his arts. After what we have said with respect to her alleged intoxication at the time she signed the deed, we need make no further reference to that subject. She had then been only three days discharged from Mt. Hope, whence she came in a normal condition. Before her entrance into that institution on the 20th of April, preceding, she had requested Bannon to straighten out her business for her, and on the eleventh day of May, the next day after leaving Mt. Hope, voluntarily, without having been requested and without having been seen by Bannon, she had met him at his office, and "gone over" with him all her business. On the next day, the 14th, she came again, voluntarily, and executed what had been determined upon. It does not appear that Bannon was personally interested in any re-

spect in procuring the conveyances from her. They did not enure to his benefit, that she should convey her equity of redemption to Gunther. Nor was the deed of the Whitehouse lot a matter of importance to him, for it still left him under the obligation to account to her. It was simply a scheme by which Mrs. Watts creditors could be "blocked." Why should he exercise undue influence to accomplish that purpose? It is not contended that he possessed or undertook to exercise, other influence, than such as arose from her confidence in his skill and fidelity, as her attorney. Indeed he seems to have employed that, for the protection of her interests and welfare, bodily and financial. At times, he prevailed upon her to go to a sanitarium for the purpose of obtaining relief from the consequence of her habits; he insisted that she should riot be subjected to visits there, these could only have a deleterious influence over her, and he took care that when she had been sufficiently restored, she should be promptly discharged. He advised her, it is true, to commit the fraud upon her creditors, but there is nothing to show that his purpose was to secure advantages for himself. That she assented willingly to his advice and cheerfully committed the fraud, in the hope and expectation of securing profit therefrom, cannot be doubted, and she cannot now avoid the consequences of her own act by claiming that she was over persuaded or forced by the devices of Bannon.

The order must be affirmed.

*Order affirmed with costs to the appellee.*

(Decided June 8th, 1904.)