*A. Russ*, for the defendants.

*W. Gaston*, for the plaintiff.

---

SOLOMON S. SLEEPER & others *vs.* GEORGE H. CHAPMAN & trustees.

Suffolk.    Nov. 15. — Dec. 28, 1876.    AMES & LORD, JJ., absent.

On the issue whether a mortgage of personal property, consisting in part of groceries and provisions, conditioned that the mortgagor " shall not, except with the consent in writing of the grantee or his representatives, attempt to sell or remove from said building the same or any part thereof," and in which it was agreed that the mortgagor might " retain possession of the mortgaged property and use and enjoy the same," was given in fraud of creditors, the plaintiff asked the judge to rule that the mortgage was given upon an arrangement to allow the mortgagor to sell and consume the mortgaged property. *Held*, in the absence of evidence of such consent, that the request was properly refused.

An assignee, for value and without notice, of a mortgage of personal property, given in fraud of creditors, acquires a good title against the creditors of the original grantor.

A provision in a mortgage of personal property, given in fraud of creditors, that the mortgagor might use and enjoy the mortgaged property, will not warrant the jury in finding that an assignee of the mortgage had notice of its fraudulent character.

CONTRACT.    Writ dated November 28, 1874.    Personal property was attached, which was alleged in the writ to be subject to a mortgage to Benjamin Plumley, who had assigned it to William E. Littlefield.    Plumley and Littlefield were summoned as

trustees, under the Gen. Sts. *c.* 123, § 67 ; and appeared and filed answers. That of Plumley alleged that before the service of the plaintiffs' writ upon him, the principal defendant had executed and delivered to him a mortgage of the property attached, which mortgage had, before said service, been assigned by him to Littlefield. The answer of Littlefield referred to the mortgage to Plumley, and alleged that Littlefield was, at the time of the service of the writ upon him, the holder of the mortgage. On motion of the plaintiffs that the validity of the mortgage might be tried by a jury, an issue was framed whether " the mortgage set up in the trustees' answers was made to hinder, delay and defraud the creditors of said Chapman, other than said Plumley." It was agreed that this issue should cover the question whether Littlefield had such notice of the circumstances of the giving of the mortgage as to put him on his inquiry.

At the trial in the Superior Court, before *Allen,* J., it appeared that the mortgage to Plumley was dated November 2, 1874, and duly recorded on the same day, and that it conveyed " all of the stock, tools, fixtures, groceries, provisions, furniture, crockery ware, cutlery, articles and chattels of every name, nature and description now in building No. 1257, Tremont Street, in Boston, and in the basement or cellar under the same." The mortgage was given to secure the payment of a note of $800, payable on demand, and provided that the grantor should not, " except with the consent in writing of the grantee or his representatives, attempt to sell or to remove from said building " the whole or any part of the property conveyed ; and that, until default in the performance of the deed, the grantor and his representatives might retain possession of the mortgaged property, and use and enjoy the same. The assignment to Littlefield purported to be in consideration of $700, and was dated November 7, 1874, and recorded on the 18th of the same month.

There was also evidence tending to show that creditors of the principal defendant could not obtain the amount due them in the summer and fall of 1874, that attachments were made on November 7 and 11, 1874, and that business was going on as usual for several days after these attachments were made, and that the proceeds of the sales made were paid over by the principal defendant to the keeper.

Benjamin A. Plumley testified as follows: "Chapman owed me $803.49. I had dunned him for it, but he was slow in paying; I had asked him for money from time to time, and he had paid me various sums on account. On November 2, 1874, I attached his stock in trade in his store, and put in a keeper. I was present when the mortgage was drawn up in my attorney's office. Chapman was there; he said that he had a good deal trusted out, but that he did n't want to press good customers; that he had on his books more than enough to pay his debts; that he was going to receive some money from his father; that he owed me more than all the rest of his creditors put together; that he would give me a mortgage of his stock in trade, if I would n't press him, if I would give him time. I told him if he would give the mortgage I would n't press him; I told him to pay me along as he could, $25 and $50 at a time. He said that it would help him to set my debt aside, and that with this debt set aside he would be able to go on with his business and pay the rest of his creditors, if I would n't press him. I said he might go on and do business as usual for all me. He paid me $3.49, and gave me the mortgage for $800. I never received anything from him on the mortgage, and never asked him for anything. I sold the mortgage November 7, 1874, to Littlefield, for $700; the mortgaged property was stock rather than fixtures, *i. e.* sugar, flour, cheese, and that sort of thing. I removed my attachment when the mortgage was given, and discontinued my suit. I traded with Chapman and sold him goods at two different times after he gave the mortgage, and before the attachment in this suit. There was no agreement between me and Chapman to delay his creditors and prevent them from attaching. I understand that Chapman has run off."

William E. Littlefield testified as follows: "I bought the mortgage of Plumley for $700 cash. I did not go up to the store to see the property. Plumley said that the mortgage would be paid probably during the year, and that Chapman was going on with his business. I thereupon told Plumley I would take the mortgage for $700, if he said it was good. He said, 'If the mortgage is n't good, I am.' He indorsed the mortgage note to me. I never went to Chapman's store; I supposed Chapman was selling the mortgaged property. Never have had any money from

him. Three or four weeks after the attachments I asked him if he would give me some money. I knew that Plumley was good, and paid no attention to the matter. One Mitchell, a creditor of Chapman's, told me that Chapman's stock had been attached. Before the commencement of this suit I gave the mortgage and the note to Plumley's attorney, giving him full authority to do what he saw fit in the matter."

C. E. Stratton testified as follows : " I brought this suit as attorney for the plaintiffs. Littlefield's attorney, the same one mentioned by him and Plumley in their evidence, came to see me shortly after the beginning of the suit, and in the course of negotiations for settlements explained to me the way the mortgage came to be given. He said, 'I and Plumley talked with Chapman about giving the mortgage. Chapman said he owed Plumley as much as he did all the rest of his creditors. I told Chapman then that he ought to secure Plumley and give him a mortgage, and that a mortgage would keep other creditors from attaching and putting keepers in his store, and give him a chance to turn round.' The attorney told me that the mortgage was *bonâ fide*, and subsequently to this conversation I went to Plumley's and looked at his books." This was all the evidence material to the issue.

Upon the above evidence and upon the mortgage, the plaintiffs asked the judge to direct a verdict for them on the ground that the mortgage was given upon an arrangement to allow the mortgagor to sell and consume the stock in trade. The judge declined so to rule, but ruled that the mortgage did not authorize the mortgagor to sell the mortgaged property, nor to remove it from the building where it was when mortgaged. The plaintiffs then requested the judge to rule as follows : " 1. That if the mortgage was made to Plumley, to hinder, delay and defraud Chapman's creditors, then it is void in Littlefield's hands. 2. That the jury are warranted in finding that Littlefield had notice of the fact that the mortgage was made to hinder, delay and defraud Chapman's creditors from the provision in it that Chapman might use and enjoy the stock in trade." The judge refused so to rule, and left the question of the validity of the mortgage to the jury on the whole evidence, including the mortgage, and including the question whether Littlefield had notice, under instructions which were not excepted to.

The jury found that the mortgage was not given to hinder delay or defraud Chapman's creditors ; and the plaintiffs alleged exceptions.

*T. L. Livermore & C. E. Stratton*, for the plaintiffs.

*B. D. Washburn*, for the trustees, was not called upon.

COLT, J. The issue in this case, which was submitted to the jury under the provisions of the Gen. Sts. *c.* 123, §§ 67, 69, was whether the mortgage of personal property, given by the principal defendant to Plumley, and by him assigned to Littlefield, the supposed trustee, was made to hinder, delay and defraud creditors. It was agreed at the trial that this issue should be taken to include the question whether Littlefield had notice of the alleged illegality.

The mortgage covered the furniture, fixtures and stock of goods in the principal defendant's store, consisting in part of groceries and provisions. It was given to secure a note for $800, payable on demand.

The case was submitted to the jury upon all the evidence, under instructions not excepted to, and the verdict must stand unless the specific instructions requested, or some of them, should have been given.

1. The mortgage expressly provides that the mortgagor shall not attempt to sell or remove the goods and chattels, except with the consent in writing of the mortgagee ; and, there being no evidence of such consent, the court properly declined to rule that the mortgage was given upon an arrangement to allow the mortgagor to sell and consume the stock in trade. So far as there was evidence of such an arrangement in fraud of creditors, it was proper to submit it to the jury on the question of fraud.

2. It is not true, as a legal proposition, that a conveyance by way of mortgage of personal property, given to hinder, defeat and delay creditors, is to be treated as void in the hands of an assignee, who takes the same for value, without notice, as against an attaching creditor. *Bigelow* v. *Smith*, 2 Allen, 264. *Green* v. *Tanner*, 8 Met. 411. *Hoffman* v. *Noble*, 6 Met. 68.

3. The court could not properly be required to rule that the single fact of the provision in the mortgage, that the mortgagor might use and enjoy the property mortgaged until breach of condition, would warrant the jury in finding that Littlefield had

notice that it was fraudulent as to creditors. It can seldom be the duty of the court to instruct the jury that a single fact will warrant the jury in finding fraud. All the facts surrounding the transaction are to be taken into account collectively. And this fact must have been given the weight to which it was entitled, if any, in the instructions which were not excepted to. If the fact cannot be said to warrant the finding of the original fraud, it cannot surely warrant the jury in finding that Littlefield had notice of the fraud. *Banfield* v. *Whipple*, 14 Allen, 13. *Jones* v. *Huggeford*, 3 Met. 515. *Briggs* v. *Parkman*, 2 Met. 258, 263. *Exceptions overruled.*