# CIRCUIT COURT NO. 2 OF BALTIMORE CITY.

Filed March 29, 1899.

DOUGLAS H. GORDON ET AL.
VS.
CECIL R. ATKINSON ET AL.

*A. H. Taylor, E. P. Keech, Jr.*, and *Foster & Foster* for the plaintiffs.

*Daniel L. Brinton* for the Economy Savings Bank.

STOCKBRIDGE, J.—

On the 30th of July, 1897, Cecil R. Atkinson executed a mortgage to a certain A. J. Steers, which recited an indebtedness from the mortgagor to the mortgagee of $15,000, payable February 10th, 1898, and the day following its execution the mortgage was placed on record. On the 6th day of August in the same year the Economy Savings Bank loaned to Alphonzo J. Steers $5,000, taking his note for that amount payable in six months, and to secure its payment the mortgage from Atkinson to Steers was assigned to the bank, and the assignment duly recorded upon the same day that it was executed. A month and a half later, on the 29th of September, 1897, a judgment was recovered by Harry W. Boureau, one of the plaintiffs in this action, against the Best Telephone Company, William J. Atkinson and Cecil R. Atkinson for the sum of $503.-83, with interest and costs. Following this on the 12th day of November, 1897, a promissory note given twelve months earlier by Cecil R. Atkinson to Douglas H. Gordon, the other plaintiff, fell due, and not being paid at maturity Mr. Gordon brought suit to the December rule day, and on the 29th of December, 1897, recovered judgment in the Superior Court against Cecil R. Atkinson for the sum of $5,442.30, with interest and costs. The present bill seeks to have the mortgage from Atkinson to Steers set aside as in fraud of creditors, and therefore void, and also the assignment of the mortgage to the Economy Savings Bank, and to have the property covered by mortgage subjected to the judgment claims of the plaintiffs. The assignment from Steers to the Economy Savings Bank of the mortgage was as collateral security for the $5,000 indebtedness from Steers to the bank; and on the 2d of September, 1897, Steers attempted to make a further assignment of the mortgage, subject to the lien of the bank for $5,000, to a certain Charles S. Hinchman. A decree pro confesso was in due course entered against Mr. Hinchman, and it is sufficient to say with regard to this assignment that there is no affidavit to it in conformity with the Act of Assembly, and therefore under the terms of the Act that assignment was void, and did not operate to transfer any title or interest from Steers to Hinchman.

The greater part of the testimony taken in the case in behalf of the plaintiffs is directed to showing either that there was no consideration at all for the execution of the mortgage or that if there was a consideration it was far less than that expressed upon the face of the mortgage, and consisted in the supposed transfer from Steers to Cecil R. Atkinson of certain stocks and bonds of uncertain, if any, value. The proof does not show any money whatever to have been paid by Steers to Atkinson at the time of the mortgage, and it was insisted in argument that this was such variation from the terms of the recital of the mortgage as to render it void. It is perfectly true that if a valuable consideration is recited in a mortgage, proof that the consideration was good, but not valuable, will not be sufficient to support the instrument, but in the mortgage under consideration there is no recital of a cash indebtedness, simply the fact of an indebtedness of a certain amount, and the cases are abundant that under such circumstances any proof is adequate which shows the consideration to have been valuable.

Mayfield vs. Kilgour, 31 Md. 246.

The testimony with regard to the mortgage, the real consideration for it,

whence derived, and how the $5,000 received by Steers at the time of the loan made by the Economy Savings Bank to him was used and applied, consists for the most part of the examination of the mortgagee himself, and it is sufficient to say that his evidence is of such a contradictory character, interwoven with so many improbable and impossible statements, that, even if he were not flatly contradicted by other witnesses, any Court would be compelled to reject his testimony entirely, and refuse to base any decree whatever upon it. A portion of the documentary evidence in the case consists of accounts which were kept by or under the direction of Steers, and it is difficult to know the extent to which that evidence, as well, may be tainted. Without reviewing the entire evidence, suffice it to say that the conclusion is irresistable, from the evidence as a whole, that the pretended mortgage of July 30th, from Atkinson to Steers, was wholly fraudulent, so far as the consideration for it is concerned, and were Steers the sole defendant in this case it would unhesitatingly be set aside. The Economy Savings Bank, however, has advanced the sum of $5,000 to Steers, taking an assignment of this mortgage as collateral security for the repayment of the loan, and therefore claims to be a purchaser for value without notice, and that no matter how fraudulent may have been the transaction as between Atkinson and Steers, it was no party to the fraud, and cannot be bound thereby.

That the bank had any actual knowledge or notice of the fraud is not pretended. The most that is claimed is, that the attendant circumstances were such as should have placed it upon inquiry, and that failing to make such inquiry, it must suffer by reason of its own laches. It is of course easy at this time to see occasion for suspicion in many things, but as to whether there were such circumstance as legally to put the bank upon inquiry as to the character of the mortgage must be determined, not in the light of what is now known, but in the light of events as they presented themselves to the officers of the bank at that time, and nothing appears which as it must then have presented itself to the officials of the Economy Savings Bank, was sufficient to place that responsibility upon the bank. Counsel for the plaintiff have strenuously argued that the refusal of Mr. Meyerdirck to accept an assignment of the mortgage shows the existence of such circumstances, but Mr. Meyerdirck's action can in no way bind the Economy Savings Bank, unless the knowledge in Mr. Meyerdirck's possession is shown to have been brought home, or in some way made known to the officers of the bank, Reed vs. Smith, 14 Ala. 387, and there is no pretense whatever that any officer of the Economy Savings Bank knew at the time that this loan was under consideration of the proposition made to Mr. Meyerdirck and its refusal, or even that he had had any knowledge of the mortgage. Mr. Meyerdirck himself, a careful and prudent man, seriously considered taking an assignment of the mortgage, going so far as to have the title of the mortgage examined, and finally refusing it only when he learned that Mr. Cecil R. Atkinson had not received any money from Mr. Steers for the execution of the mortgage. (Ans. to 9th Q., testimony Meyerdirck.) It thus appears that others to whose attention the matter was brought, besides the officers of the Economy Savings Bank, saw nothing in the attendant and surrounding circumstances to in any way arouse their suspicion, and it was but natural after Mr. Meyedirck had declined to accept the assignment of the mortgage left with him upon the knowledge coming to him of the fact of the lack of consideration for it, that that fact would be carefully concealed from any subsequent person to whom the mortgage might be offered.

Since then there is nothing sufficient in the evidence to impose upon the bank any special burden of inquiry, or impugn the bona fides of its action in making the loan and taking the assignment of the mortgage as collateral; the only remaining question to be disposed of is the legal position of the bank when it had so purchased in good faith, without notice, for a valuable consideration and before maturity.

As to the general proposition that a bona fide vendee, without notice, acquires a title free from any taint of fraud which might have attached to the transactions in the hands of his vendor or assignor, there can be no question, and this is true whether the property involved be real estate, per-

sonal property, negotiable paper or in most cases of choses in action, which are not ordinarily assignable.

Sleeper vs. Chapman, 121 Mass. 404; Phelps vs. Morrison, 24 N. J. Eq. 195; Spicer vs. Robinson, 73 Ill. 519; Snyder vs. Roberts, 13 Texas 598; Smart vs. Bement, 4 Abbott's App. 253; Thompson National Bank vs. Corwine, 89 Fed. Rep. 774; Smith vs. Pattison, 84 Md. 341.

But it has been strenuously argued on the part of the plaintiffs, that a mortgage is only a chose-in-action, and that with regard to it, a different rule is applicable; and especial stress was laid upon the case of the Central Bank of Frederick against Copeland, 18 Md. 317. That case, however, differed entirely from the one under consideration in this essential particular; McPherson and Thomas, the holders of the fraudulent mortgage, assigned the same to the Central Bank as security, but there was no assignment of the debt, to secure which, the mortgage purported to have been executed. And in strict accord with this was the concession made by counsel at this hearing, that had there been in this case a promissory note passing from Atkinson to Steers, with the mortgage of the property as collateral, and such note being negotiable in its form, had been transferred to the Economy Savings Bank at the time of the assignment of the mortgage, that its title would be complete. In every mortgage, the debt that is due is the principal thing, and the mortgage which is given to secure that debt is collateral with and follows it, and in the case of the Central Bank against Copeland, supra, the debt remained in the hands of the original mortgagee, and the mortgage alone was transferred; in the present case, however, there was no note given; the indebtedness and the mortgage were one and the same, and the assignment of the one necessarily carried with it the other.

Great reliance was also placed by the plaintiffs upon the language used by the Court in deciding the case of the Cumberland Coal and Iron Co. vs. Parrish, 42 Md. 598, but in construing the language of Judge Alvey in that case, the facts out of which the case arose cannot be overlooked. The assignment of the mortgage there under consideration was not for an actual, present valuable consideration; it was at most to secure an alleged pre-existing indebtedness, and though the language is somewhat broad, what the case really decides is simply that the assignee in that case, who had paid nothing, was not a bona fide purchaser for value.

This, however, is not the case between the mortgagor upon the one side setting up a default in the consideration, or any other equitable defense, or of any person claiming under him, and the bona fide assignee for value of the mortgage upon the other, it is a case between certain creditors of the mortgagor, seeking to enforce a claim adversely as against both mortgagor and mortgagee, and these creditors were not such as had or could have had, any lien upon any property of their debtor until long after both the mortgage and the assignment had been executed and placed on record, and as between them and a bona fide assignee for value of a mortgage, the most favorable position that can be assigned to them is to say that their equities are equal, and where the equities of the parties are equal, the legal estate is always allowed to prevail.

Hart vs. Farmers' and Mechanics' Bank, 33 Vt. 265.

Any other or different conclusion from this would be to practically nullify the statutory provisions regulating the recording of papers, and the effect of such record.

A decree will, therefore, be signed setting aside the purported assignment of mortgage from Steers to Hinchman, and also the mortgage from Atkinson to Steers, except as to the sum of $5,000, for which the claim of the Economy Savings Bank must be held valid, with the accrued interest thereon, and expenses upon the property.