## THE ECONOMY SAVINGS BANK *vs.* DOUGLAS H. GORDON ET AL.

*Rights of Bona Fide Assignee for Value of Mortgage Voidable by Creditors of Mortgagor as Against Mortgagee Because Without Consideration—Creditors' Bill—Notice—Priorities.*

A party who takes an assignment of a mortgage for a valuable consideration, and without notice that the title of the assignor was voidable by the creditors of the mortgagor because the mortgage was without consideration, acquires a good title as against such creditors.

The owner of property executed a mortgage of it in due form to secure a stated indebtedness, but there was in reality no consideration between the parties and their object was to raise money for the benefit of the mortgagor. The defendant loaned to the mortgagee a sum of money and took an assignment of the mortgage as security. The mortgage was not given to secure the payment of a promissory note. The defendant had no notice of a lack of consideration for the mortgage and was a *bona fide* purchaser. Plaintiffs, who were general creditors of the mortgagor at the time of the execution of the mortgage and subsequently became judgment-creditors, filed a creditors' bill to have the mortgage set aside because fraudulent and without consideration as against them, *Held,*

1st. That the defendant as *bona fide* purchaser of the mortgage did not take the same subject to all the equities that might have been charged against it in the hands of the original mortgagee, but that the legal title of the defendant is entitled to prevail since the plaintiffs have no superior equity and no lien on the property.

2nd. That the fact that the treasurer of the defendant was also the cashier of the bank in which the mortgagee kept his account did not put the defendant upon inquiry as to the *bona fides* of the mortgage.

3rd. That the mortgaged property should be sold and the proceeds applied, first, to the payment of the amount loaned by defendant, with interest, and then to the payment of the creditors of the mortgagor according to their legal priorities.

Appeal from a decree of the Circuit Court No. 2, of Baltimore City (STOCKBRIDGE, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD and SCHMUCKER, JJ.

*John Prentiss Poe* and *Daniel L. Brinton,* for the appellant.

1. Was the mortgage fraudulent? This inquiry the court below answered in the affirmative. While it is true, that the position of this appellant does not depend, as we contend, upon the fraudulent character of the mortgage, yet it is respectfully submitted that the testimony in the case as shown by the record, does not clearly establish that the mortgage was fraudulent. The entire testimony was the testimony taken in behalf of the plaintiff, and the chief witness was Alphonzo J. Steers. A large part of the record is taken up with questions and answers concerning the life of the witness, and his dealings with the Atkinsons and the Eastern Electric Company. After his testimony showed that the consideration for the mortgage was $10,000 of Best Telephone Bonds, and $5,000 of Best Telephone Stock, it is attempted to show that Steers had no money with which to purchase these bonds and stocks. That was not clearly established. There is ample testimony in the case to show that Steers during his life-time had accumulated some money in his business as a note-broker and otherwise; became interested with the Atkinsons in their various ventures, and loaned them money from time to time.

2. Was the Economy Savings Bank a *bona fide* holder for value without notice? In this State the authorities have gone far in maintaining the familiar principle that a *bona fide* holder for value without notice is preferred to creditors. In a fraudulent conveyance the grantee must participate in the fraud. If he is a *bona fide* purchaser without notice he is protected against creditors. *Smith* v. *Pattison,* 84 Md. 341; *Totten* v. *Brady,* 54 Md. 170; *Fuller* v. *Brewster,* 53 Md. 359; *Cooke* v. *Cooke,* 43 Md. 530; *Glenn* v. *Grover,* 3

Md. Ch. 29; *Anderson* v. *Tydings*, 3 Md. Ch. 167. See
also, Note IX to *Swan* v. *Dent*, 2 ¦Md. Ch., 111. By *bona
fide* purchasers we mean persons who have either paid or
advanced money upon the faith of the grantor's actual title
to the property transferred, or who have accepted specific
property in payment of a specific debt.    *Tyler* v. *Abergh*, 65
Md. 20.

It was contended that the mortgage having been made
on July 30th, and an assignment thereof having been made
on August 6th, 1897, that the circumstances were such as
to put upon inquiry any reasonably cautious and prudent
person.    While not admitting this, but what inquiry, if
made, would have led to the knowledge of the appellees'
claims?    It would be useless to inquire of the mortgagor
and mortgagee, because if inquiry had been made they
would not have revealed the existence of any indebtedness
on a promissory note.    The mortgage on its face was good,
having been executed for a recited consideration of $15,000,
and having been executed with all the formalities that are
required by the law of conveyancing in Maryland, with an
affidavit to the consideration, and also with an affidavit that
the mortgagee would not require the mortgagor to pay the
tax on the mortgage debt.    As was said in the case of
*Snyder* v. *Snyder*, in 51 Md. 77, the affidavit attached to a
mortgage that the consideration therein named is true and
*bona fide* as there set forth, is required by law, and entitled
to credit unless contradicted by strong proof, and when it is
considered that in the case of *Price* v. *McDonald*, in 1 Md.,
403, that a purchaser has no right to rely upon representa-
tions made by the grantor, it is absurd to say that an in-
quiry ought to be made of the grantor, as to the consider-
ation named in an instrument.

If a person with notice sells to another who has no
notice and is a *bona fide* purchaser for a valuable con-
sideration, the latter may protect his title, although it was
affected with the equity arising from the notice in the hands
of the person from whom he derived it; for otherwise no

man would be safe in any purchase, but would be liable to
have his own title defeated by secret equities of which he
would have no possible means of making a discovery.
*Story, Equity,* vol. 1, page 415, 13th ed.   It is not enough
that an over-prudent and cautious person, if his attention
had been called to the circumstance in question would have
been likely to seek an explanation of it.   There must be
some clear neglect to inquire, after actual notice that the
title is in some way defective, or some fraudulent and willful
blindness, as distinguished from mere want of caution.
*Briggs* v. *Rice,* 13 Mass. 50.   Vague reports, and rumors
from strangers, as Story, J., remarked, in *Flagg* v. *Mann,* 2
Sumner, 551, are not a sufficient foundation on which to
charge a purchaser with notice of a title in a third person.
*Buttrick* v. *Holden,* 13 Met. (Mass.) 355; PECKHAM, J., in
*Acer* v. *Westcott,* 46 N. Y. 384, speaking of the question
of notice said: "The majority of men are not 'wary,' and
where no bad faith is found, the law does not usually re-
quire such conduct, as can be expected only from the
'wary'" to protect an innocent purchaser from loss.

A *bona fide* purchaser for value without notice is pro-
tected, and he cannot be adjudged to have notice of anything
apparently improbable, and which diligent and reasonable
inquiry would not disclose.   *Seldner* v. *McCreery,* 75 Md.
287, 295;   *Lincoln* v. *Quynn,* 68 Md. 299, 305;   *Biddinger*
v. *Wiland,* 67 Md. 359; *Abell* v. *Brown,* 55 Md. 217.

Assignments of things in action are subject only to equi-
ties of the debtor party ; that they are never subject to
equities in favor of third persons, and especially are they
free from that kind of prior claim often called latent equities.
*Pomeroy's Equity,* 2 vol., sec. 715, and cases there cited ;
*Ohio Life Ins. Co.* v. *Ross,* 2 Md. Ch. 25, 37.

The purchaser to be charged with notice must have
knowledge of some fact to put him on inquiry as to the ex-
istence of some right or title in conflict with that which
he is about to purchase.   *Baker* v. *Bliss,* 39 N. Y. 74 ;
*Williamson* v. *Brown,* 15 N. Y. 362 ; *Birdsall* v. *Russell,* 29

N. Y. 250; *Willia* v. *Vallette*, 4 Mete. (Ky.) 186; *David* v. *Rischard*, 53 Wis. 495; *Johnson* v. *Hess*, 9 L. R. A. 471; *Agra Bank* v. *Barry*, L. R. 6 Irish Eq. 144; *Bigelow on Fraud*, 399; *Phelps' Equity*, sec. 241; *Parker* v. *Conner*, 93 N. Y. 125; *Shriner* v. *Lamborn*, 12 Md. 170; *Steele* v. *Sellman*, 79 Md. 6; 15 *Ency. Law*, 854–862.

3. · Is the claim of the Economy Savings Bank, as assignee, superior to the creditors of Cecil R. Atkinson? The Court below, in its second opinion, relying upon the case of the *Cumberland Coal Co.* v. *Parrish*, 42 Md. 598, gives ·the impression that, by reason of the force of the opinion there, a mortgage in Maryland, not accompanied by a promissory note, has no very high value, and that it is a *chose in action*, and when fraudulent it gives no right to an assignee however great may be the value of the consideration that was paid for it or the good faith in the transaction. This is true when there is a contest between a mortgagor and the assignee of the mortgage; but that is not this case; this is a contest between an assignee and the *creditors* of the mortgagor, and neither the case in 42 Md. 598, nor the similar case of *The Central Bank* v. *Copeland*, in 18 Md. 317, have any application whatever to the facts of this case.

An assignee of a mortgage is a purchaser, and is entitled to the protection of the recording acts as much as a purchaser of the equity of redemption. If he purchases in good faith and for a valuable consideration, he is not chargeable with any notice his assignor had of prior incumbrances upon the property, provided he records his assignment before such prior mortgage or other deed is recorded. 1 *Jones on Mortgages*, sec. 475; *Westbrook* v. *Gleason*, 79 N. Y. 23; *Decker* v. *Boice*, 83 N. Y. 215.

A mortgage is a conveyance of an estate or interest in the land mortgaged. By the common law, a mortgage was a conditional conveyance of the land mortgaged, and it is still a conveyance within the recording act. *Decker·* v. *Boice*, 83 N. Y. 220.

An assignee is chargeable only with constructive notice,

such as is afforded by the record, or by open and adverse possession of the premises by another.   *Trustees of Union College* v. *Wheeler*, 59 Barb. (N. Y.) 585.

A mortgagee is *pro tanto* a purchaser, and a *bona fide* mortgagee is equally entitled to protection as a *bona fide* grantee.  So the assignee of a mortgage is on the same footing with the *bona fide* mortgagee.  In all cases the reliance of the purchaser is upon the record, and when that discloses an *unimpeachable* title he receives the protection of the law as against unknown and latent defects.   *Pierce* v. *Faunce*, 47 Maine, 513.

Although an assignment of a mortgage be made for the purpose of hindering, delaying and defeating the assignor's creditors, if the assignee purchases it in good faith for value, without notice of the fraudulent intention of the assignor, or of circumstances which should have put him on inquiry; his title can not be impeached.  As against him it does not avail to show that the debtor's assignment was fraudulent, unless it be shown that the assignee participated in the fraudulent intent, or took it under such circumstances that he is chargeable with notice of the fraudulent intent on the part of the assignor.   1 *Jones on Mortgage*, sec. 828 ; *Tantum* v. *Green*, 21 N. J. Eq. 364.   The title to a mortgage that was fraudulent in its inception as against the mortgagor's creditors becomes valid in the hands of one who has purchased it in good faith without notice of the fraud.

The contrary to this was asserted in some of the earlier cases in this country, upon a distinction taken between a conveyance fraudulent as against creditors and one fraudulent against subsequent purchasers ; the former being held absolutely void, and the latter voidable only.   But this distinction is rejected by all the later authorities, and the conveyance in both cases held to be voidable only.   *Danbury* v. *Robinson*, 14 N. J. Eq. 213 ; *Oriental Bank* v. *Hoskins*, 3 Met. (Mass.) 332.

A *bona fide* assignee for value of a mortgage of land may enforce it by foreclosure, although it was originally

given as consideration for a transfer of the land fraudulent as to creditors, and such transfer has been adjudged void. *Smart* v. *Bement*, 4 Abb. (N. Y.) App. Dec. 253. The burden of proof that the assignee took the mortgage with notice, or that he is not a *bona fide* purchaser, is on the party who sets up the fraud. *Marshall* v. *Billingsly*, 7 Ind. 250 ; *Farmers' Bank* v. *Douglass*, 19 Miss. 11 S. & M. 469 ; *Langdon* v. *Keith*, 9 Vt. 299. By the Act of Assembly, 1890, ch. 364, amending the Insolvent Act, sec. 14, of Art. 47 of the Code, which prohibits preference, it is provided that a mortgage or other conveyance executed by the debtor for money *bona fide* loaned at the time of such mortgage or conveyance shall be a subsisting lien. *Hinkleman* v. *Fey*, 79 Md. 112.

*Archibald H. Taylor* and *E. P. Keech, Jr.* (with whom were *Foster & Foster* on the brief), for the appellees.

Conceding, for the sake of the argument, that this assignment to the Economy Savings Bank was made without knowledge of the fraud and want of consideration surrounding the execution of the mortgage, we still maintain that, having proven the mortgage fraudulent, it is void with respect to the rights of Atkinson's creditors, in whosoever hands it may be found, and that no assignee of it can obtain a better title than Steers, the original mortgagee, had. We have shown beyond the possibility of a doubt that no tangible or real consideration ever passed from Steers to Atkinson for the execution of this mortgage. Inasmuch, therefore, as Atkinson had creditors at the time the mortgage was given, the only effect of such a voluntary or covinous conveyance could be to hinder them in obtaining the satisfaction of their debts. Consequently, at their suit the mortgage must be held to be void with respect to their rights under the Statute of Fraudulent and Voluntary Conveyances.

This mortgage "stands alone," *i. e.*, there is no mortgage note or other evidence of the mortgage indebtedness than the recital in the mortgage. The effect of this is felt when

we·remember that a mortgage in itself is nothing. It is true it is a conveyance of lands. But even so, it is for the mere purpose of securing the performance of some entirely col-lateral covenant, such as the payment of the mortgage debt, which of course is the most common purpose of mortgages. The performance of this covenant, with or without the re-lease of the mortgage, operates to discharge it and all obli-gations under it. It is, in a measure, in view of this, that the cases in Maryland, conforming to the best considered doctrine elsewhere, are clear that a mortgage has no exist-ence apart from the debt which it is given to secure ; that it is a mere accessory or incident to the debt ; and so far is it inseparably united to the debt (the one being in truth the appurtenant to the other) that a separate alienation of either can not be made and an assignment of the debt carries in equity the mortgage, and in such a case the mortgagee is held to be a trustee for the assignee of the debt. *Clark* v. *Levering*, 1 Md. 178–180; *Washington Ins. Co.* v. *Kelly*, 32 Md. 421, 439; *Byles* v. *Tome*, 39 Md. 461, 463.

The evidence of the pretended debt is not in negotiable form. This is patent. If it were, then the assignment of the debt under the Law Merchant to an innocent holder for value before maturity might confer upon such assignee a title upon which he could rely for the payment of his debt without regard to the circumstances surrounding its creation, or pretended creation. But such is not the case here. This pretended debt, even at best, can only be treated as a mere non-negotiable *chose in action* ; and the assignee of it can in no way obtain any superior title to that of his assignor, and can only take subject to all the equities and defences to which it is or might be subject in the hands of the original pretended creditor. *Harwood* v. *Jones*, 10 G. & J. 404; *Eversole* v. *Maull*, 50 Md. 95.

Nor does it alter the case that the debt is secured by mortgage. For it has been·held that where a mortgage is given to secure a negotiable instrument, the mortgage is in a way attached to the instrument and partakes of its char-

acteristics, and in such a case an assignment of the debt for value, under due, and without notice of any existing equity, carries with it also the mortgage, likewise free from equities. *Carpenter* v. *Longan*, 16 Wall. 271; *Jones on Mortgages*, vol. 1, sec. 834, etc.

It is also true, by virtue of the same rule, which denies to the mortgage any superiority over the debt which it is given to secure, that when a mortgage "stands alone," without an instrument evidencing the debt, like the mortgage in this case, or is given to secure a non-negotiable instrument, such as a single bill, or where it is given to secure a note, which is endorsed over after maturity, then it passes to an assignee, like any other *chose in action* which is not protected by the Law Merchant, and the assignee takes only such title as his assignor had. *Jones on Mortgages*, vol. 1, sec. 841, *et seq.* *Carpenter* v. *Longan*, 16 Wall. 271; *Judge* v. *Vogel*, 38 Mich. 569; *Castle* v. *Castle*, 78 Mich. 298; *Corbett* v. *Woodward*, 5 Sawyer, 403; *Westfall* v. *Jones*, 23 Barbcur, 9; *Schafer* v. *Reilly*, 50 N. Y. 61; *Trustees* v. *Wheeler*, 61 N. Y. 88–105; *Crane* v. *Turner*, 67 N. Y. 437; *Hill* v. *Hoole*, 116 N. Y. 289–304.

This rule prevails in Maryland. *Central Bank* v. *Copeland*, 18 Md. 305–317; *Timms* v. *Shannon*, 19 Md. 296–314; *Cumberland Coal Co.* v. *Parrish*, 42 Md. 598–613.

In his second opinion, JUDGE STOCKBRIDGE summed up the situation in these words: "The principle involved may well be illustrated in this: Suppose that the original mortgage from Atkinson to Steers instead of being fraudulent had been valid for the full consideration therein expressed, $15,000, and in the same form in which it was executed, and that Steers had paid to Atkinson all but $1,000 of the indebtedness to secure which the mortgage was given, and had then, before maturity, transferred the mortgage either absolutely or as collateral for an actual cash consideration of $10,000 to the Economy Savings Bank, which had then attempted to foreclose. It will not be contended seriously that an assignee of the mortgage under such circumstances

could have required the payment of Mr. Atkinson or held him for a larger amount than that actually due as between him and Steers. In other words, that the mortgage was non-negotiable and passed subject to all equities. And if this be true where the original mortgage was *bona fide*, it is evident that a mortgage which is fraudulent in its inception can occupy no better position than a valid mortgage would have done."

We therefore submit that upon both principle and authority our position is perfectly well taken, namely, that when a mortgage is given to secure a debt which is not in a form negotiable under the Law Merchant, then no assignment of either the debt or the mortgage securing it can be made, save subject to the same equities and defenses which might be raised against their enforcement in the hands of the original mortgagee (the creditor), and that any assignee of such a mortgage, whether he have notice of a defense to its enforcement or not, cannot obtain any better title than his assignor had. Consequently the conclusion is reached " from the evidence as a whole, that the pretended mortgage of July 30th, from Atkinson to Steers, was wholly fraudulent so far as the consideration for it is concerned, and were Steers the sole defendant in this case it would unhesitatingly be set aside," and we must conclude that the Economy Savings Bank and Hinchman, however clean their hands may be, can only take such title as Steers might have had, that is, a title liable to be defeated and displaced to the extent that the mortgage operated as a fraud upon the creditors of Cecil R. Atkinson.

Finally, in this connection, it must be observed that Steers himself, in terms, did not attempt or pretend to convey to the Economy Savings Bank any better title to this fraudulent mortgage than he himself had, which, with respect to the rights of the appellees, is *nil.* The terms of the assignment are clear, " and the said Alphonso J. Steers doth assign all his right, title and interest to the Economy Savings Bank of Baltimore City, in and to the said mort-

gage and the property thereby conveyed." Waiving the question as to whether or not this paper is not a mere nullity, for the reason that it fails to convey the mortgage debt, yet can it be supposed that the Economy Savings Bank can obtain under the terms of that instrument any larger or better estate than Steers had—particularly in view of the fact that the very nature of the thing transferred is such that Steers never could have conferred upon another a better title to it than he himself had ? In other words, we submit that the draughtsman of the assignment possibly wrought better and more accurately than he knew, and used the most apt and pertinent words known to the law to transfer Steers' interest in this mortgage, such as it was, to the Economy Savings Bank.

But inasmuch as Atkinson himself and all persons claiming under him are prevented by law from setting up the fraud and lack of consideration for the mortgage, by virtue of being *in pari delicto*, and only Atkinson's creditors, who have a right superior to their debtor, may assail this deed, (see note, *Swan* v. *Dent*, 2 Md. Ch. 93), the decree in this case is perfectly correct, when it directs that the proceeds of sale be devoted after the payment of costs, to the payment, first, of the debts due the complainants below, and Atkinson's other creditors, in order, and then to the satisfaction of the amount loaned by the Economy Savings Bank to Steers on the security of the mortgage. For the mortgage is not wholly void. It is only void so far as the rights of Atkinson's creditors go. After they are satisfied, Steers or his assignee has a good title against Atkinson. *Wood* v. *Hunt*, 38 Barbour, 302–311 ; *Bump on Fraudulent Conveyances*, sec. 432 ; *Strike's Case*, 1 Bland, 57-69.

In his second opinion, JUDGE STOCKBRIDGE says : " Where the debt for which the mortgage is given as collateral is evidenced by a promissory note or other paper negotiable in form, and the same is negotiated while under-due, *bona fide* and for value, the rule of law affecting negotiable instruments obtains, and the endorsee or assignee of such

negotiable instrument, evidencing the debt, takes it freed from any equities which would attach to it as between the original parties and the mortgage which is collateral with it, follows the note, and thus passes to the assignee of the debt, discharged of all equities, so as to be enforceable by him.    Where, however, as in the present case, the indebtedness from mortgagor to mortgagee is not evidenced by anything in the form of a negotiable instrument, but evidenced only by the mortgage itself, which is not a negotiable instrument, the mere fact of the recital of the indebtedness in the mortgage is not sufficient to give it the character of a negotiable instrument, and it becomes simply *a chose in action*, which, being non-negotiable, necessarily passes to any assignee thereof, subject to all equities which might be urged against it in the hands of the original mortgagee.    While this view has not been universally adopted, it is that which is recognized in this State, and was the principle underlying the decision in the *Cumberland Coal and Iron Company* v. *Parrish*, 42 Md. 598, and recognized by the Supreme Court of the United States in *Carpenter* v. *Longan*, 16 Wallace, 271.    "This case differs from the line of cases where the fraudulent grantee of land under a deed, or chattels under a bill of sale, executes a conveyance or mortgage of the property to a *bona fide* purchaser without notice, since in those cases the property which passes by the deed or bill of sale or becomes limited by way of mortgage, is land or specified property, something more than a *chose in action.*"

Further than this these cases run side by side with decisions of the very same Courts which are identical with the Maryland doctrine on the subject. See *Fish* v. *French*, 15 Gray, 520; *Strong* v. *Jackson*, 123 Mass. 60–63; *Magie* v. *Reynolds*, 51 N. J. Eq. 113; *Scott* v. *Magloughin*, 133 Ill. 33; *Westfall* v. *Jones* (*supra*), 23 Barb. 9; *Greene* v. *Warwick*, 64 N. Y. 220; *Patterson* v. *Rabb*, South Carolina, 17 S. E. 463.

SCHMUCKER, J., delivered the opinion of the Court.

On July 30th, 1897, Cecil R. Atkinson executed a mortgage upon a warehouse, owned by him, on South Howard street, in Baltimore City, to Alphonzo J. Steers, which recited that he was indebted to Steers " in the full sum of fifteen thousand dollars, payable February 10th, 1898," and that it was executed to secure the payment of this debt with interest thereon.

The mortgage was in due form, was regularly acknowledged and had attached to it a proper affidavit as to the *bona fides* of the consideration therein stated, and it was recorded on the day after its date. No note accompanied the mortgage but it contained a covenant to pay the mortgage debt and interest.

About the same time Steers, the mortgagee, applied to the American National Bank to lend him $6,000, offering to assign the mortgage as security for the loan. Schott, the cashier of the bank, explained to him that a national bank could not lend money upon real estate security, but informed him that the appellant savings bank, of which he (Schott) was treasurer, had some money on hand and would lend him $5,000 upon the mortgage if the security proved to be ample, but the matter must first be referred by the appellant to a committee who would investigate and report upon the security. Steers assented to the terms suggested by Schott and a committee from the appellant went upon the mortgaged premises and examined them and reported favorably upon the loan, provided there were no incumbrances upon the property prior to the mortgage. The matter was then referred by the appellant to its attorney to examine the title, Steers placing the mortgage in its hands for that purpose. The attorney examined the title and reported favorably upon it, whereupon the appellant, on August 6th, 1897, lent the $5,000 to Steers, and at the same time took from him an assignment of the mortgage as security for the loan.

The $5,000, so loaned, was given to Steers in the check

of the appellant to his order upon the American National Bank in which the appellant had on deposit at that time more than the amount of the check.   Steers endorsed the check to the Eastern Electric Company, which at once deposited it to its own credit in the bank upon which it was drawn, and the $5,000 was passed to the credit of the Electric Company and charged to the appellant upon the books of the bank.   The money was then used by the Electric Company to the extent of $2,000, in the payment of a loan which had been made by one Myerdirck upon a previous unrecorded assignment of the Atkinson mortgage, and the remaining $3,000 was almost entirely paid to the American National Bank in satisfaction of obligations due to it by the Eastern Electric Company, or by Geo. H. Atkinson, a brother of Cecil R. Atkinson, the mortgagor.   Steers subsequently assigned his equity in the $15,000 mortgage to one C. S. Hinchman as collateral security for a loan of $2,000.

It appears from the record that Cecil R. Atkinson, the mortgagor, and his four brothers, William J., George H., Harry and Richard F., were promotors by profession, and together operated and controlled the Eastern Electric Company and other kindred corporations, all of which proved to be speculative enterprises and soon became insolvent and passed into the hands of receivers.   Steers, who was put upon the stand by the appellees, testified that the consideration for the $15,000 mortgage from Atkinson to him consisted of $10,000 of Best Telephone Company bonds and $5,000 of Best Telephone Company stock which he had let Atkinson have prior to the execution of the mortgage, but his testimony was so inconsistent and contradictory in its different portions that it cannot be accepted as reliable. The whole testimony touching the consideration for the mortgage leads to the conclusion that there was no substantial consideration for it, but that it was executed to provide a means of raising money to assist the Atkinson brothers in staving off the impending insolvency of the Eastern Elec-

tric and Best Telephone Companies and the other enterprises which they were then attempting to keep afloat.

On December 29th, 1897, nearly five months after the loan of the $5,000 to Steers by the appellant and the assignment to the latter of the mortgage, Douglas H. Gordon, one of the appellees, obtained a judgment for $5,442.30 against the mortgagor, Cecil R. Atkinson, and his brother, Wm. J. Atkinson, on a note given by them to him on Nov. 13, 1896, for a loan which he then made to them upon Best Telephone Company bonds and stock as collateral. Gordon testified that at the time he made this loan Wm. J. Atkinson stated that his brother, Cecil R., owned the Howard street warehouse, and he, Gordon, suggested that he be given a mortgage on the warehouse as security for the loan about to be made by him. W. J. Atkinson declined to procure the mortgage, saying that it would injure his brother's credit, but stated that Gordon would have the benefit of the property by having its owner, Cecil R. Atkinson, upon the note. Gordon testified that he relied on this statement of Wm. J. Atkinson in making the loan.

Harry W. Boreau, the other appellee, obtained a judgment for $503.80 against Wm. J. Atkinson and Cecil R. Atkinson, on Sep. 29, 1897.

On Dec. 18, 1897, after Boreau had obtained his judgment and after Gordon had sued the Atkinsons, but before he had gotten his judgment, the appellees instituted the present case, which is a creditor's suit in equity against the appellant, Cecil R. Atkinson, Steers and Hinchman. The bill of complaint alleged that the mortgage from Atkinson to Steers and the successive assignments of it by him to the appellant and Hinchman were all without consideration and fraudulent and prayed to have them declared void. The appellant answered the bill denying its material allegations and setting up its title to the mortgage to the extent of the $5,000 loaned on it and interest as a *bona fide* purchaser for value without notice of any infirmity in it. Neither Hinchman nor Steers answered and a decree *pro confesso* was entered against them.

The case against the appellant came regularly to a hearing and the Court below at first filed an opinion sustaining the appellant's claim, but upon a rehearing of the case the learned judge changed his views of the case and filed another opinion of a contrary tenor and signed the decree appealed from, denying the appellant's claim to a lien on the property and directed it to be sold for the benefit of the creditors of the mortgagor.    In his second opinion the learned judge held, upon the authority of the *Cumberland Coal and Iron Co's. case*, 42 Md. 598, that the appellant, although he found it to be a *bona fide* purchaser for value of the mortgage without notice, was not entitled to a lien for its loan to Steers and interest, made upon the faith of the mortgage, because the latter not being accompanied by a negotiable obligation was a mere *chose in action* which the appellant must be treated as having taken subject to all equities that might have been urged against it in the hands of Steers, the mortgagee.

Under the facts of the case the appellant must be regarded as a *bona fide* purchaser for value of the mortgage without notice.    It advanced its $5,000 upon the mortgage in the ordinary course of business after a careful inquiry into to the value of the property and an investigation of the title upon the public records.    It was not concerned in the disposition made by Steers of the borrowed money, not one dollar of which went back into its hands or was expended for its benefit.    It was not put upon inquiry as to the *bona fides* of the mortgage by the fact that Schott, its treasurer, was also cashier of the American National Bank, where Steers and the Eastern Electric Company and one or more of the Atkinson brothers kept their accounts, and that he might have seen, by an examination of the books of the bank, what disposition was made of the borrowed money. There was, in fact, nothing in the use made of the money to suggest any infirmity in the mortgage.

The next question to be determined is what are the rights of the appellant, as such *bona fide* purchaser, *against*

*the claims of the appellee.*  As there was no attempt by Steers to assign the mortgage debt to one person and the mortgage to another, we are not called upon to consider the relative equities of one who claims as assignee of the debt and another who claims as assignee of the mortgage, as the Court were in the cases of *Clark* v. *Levering*, 1 Md. 178, and *Byles* v. *Tome*, 39 Md. 461, which were in part relied on by the appellees.  What we have to consider is the attitude of the appellant as the *bona fide* purchaser of both debt and mortgage *towards the creditors of the mortgagor*, who were such at the time the mortgage was made.

The mortgage was not given to secure an actual indebtedness of fifteen thousand dollars as it professes on its face to have been.    Its execution was evidently a means adopted by the parties to it to clothe Steers, the mortgagee, with the appearance of a good title to a large debt secured by a valid mortgage in order to enable him to raise money upon it.    It was not fraudulent in the sense that its execution had been procured by fraud, misrepresentation or constraint practiced on the owner of the land who executed it, as was the case in *Central Bank* v. *Copeland*, 18 Md. 305, and *The Cumberland Coal and Iron Co.* v. *Parrish*, 42 Md. 598, in each of which the *defrauded mortgagor* was protected in equity against the assignee of the fraudulent mortgage.   In the present case the execution of the mortgage was the voluntary and deliberate act of the mortgagor from which he had no equity to be relieved, even as against the mortgagee.   *Snyder* v. *Snyder*, 51 Md. 77 ; *Cushwa* v. *Cushwa*, 5 Md. 44.   We have, therefore, no question before us of subjecting the rights of the appellant as assignee of the mortgage to any equities to which the assignor would have been liable *in favor of the mortgagor*, for here it is plain that there were no such equities.

The present mortgage is to be regarded as fraudulent only in the sense that having been made to secure a simulated and not a real indebtedness it operated to hinder, delay or defraud the creditors of the mortgagor, and was, there-

fore, obnoxious to the provisions of the Statute of 13th Eliz., ch. 5.

The real question in the case is thus narrowed down to a comparison of the relative strength of the claims on the mortgaged property of the appellant, as assignee of the specific lien of the mortgage, and the appellees, as subsisting general creditors of the mortgagor, having reduced their debts to judgments after the assignment of the mortgage had been made.

If the conveyance under consideration had been a fraudulent deed instead of a mortgage, the right of the appellant as a *bona fide* purchaser to a lien on the property for the $5,000 advanced and interest could not seriously be questioned. *Cone* v. *Cross*, 72 Md. 102 ; *Hull* v. *Deering*, 80 Md. 432 ; *Hinkle* v. *Wilson*, 53 Md. 293 ; *Worthington* v. *Bullitt*, 6 Md. 198. The broader and more general proposition, that a *bona fide* purchaser without notice under a deed from a fraudulent grantee takes a good title which is not impaired by the fact that judgments were obtained against the fraudulent grantor prior to the conveyance by the fraudulent grantee, is well sustained by authority. 4 *Kent Com.*, 464 ; *Sleeper* v. *Chapman*, 121 Mass. 404 ; *Phelps* v. *Morrison*, 24 N. J. Eq. 195 ; *Totten* v. *Brady*, 54 Md. 170 ; *Swan* v. *Dent*, 2 Md. Chy. 111, note 9, Brantly's ed.; *Wait on Fraud Conv.*, sec. 369.

In the case of *Farmers' Bank* v. *Brooke*, 40 Md. 257, the title of a *bona fide purchaser of a mortgage note* to the lien of the mortgage securing it was upheld against the suit of the creditors of the mortgagor, although it was admitted that the note and mortgage had been given in prejudice of the rights of his creditors, and would have been void as against them in the hands of the mortgagee. The fact that the mortgage in that case was accompanied by a promissory note distinguishes it from the case at bar, but the circumstance of the negotiability of the mortgage debt was not expressly mentioned or dwelt upon in the Court's opinion. See also *Danbury* v. *Robinson*, 14 N. J. Eq. 218–219.

A· *bona fide* mortgagee from a fraudulent grantee has in a number of cases been held to be entitled to protection, to the extent of the debt due him *against the creditors* of the fraudulent grantor upon the ground that a mortgagee is to be treated as· a *purchaser* to the extent of his interest within the meaning of the term *purchaser* as used in statutes such as that of 13 Eliz. Ch. 5, and this where the mortgage was not accompanied by a negotiable instrument.    *Ledyard* v. *Butler*, 9 Paige Chy. 136–7 ; *Murphy* v. *Briggs*, 89 N. Y. 451; *Shorten* v. *Drake*, 38 Ohio St. 76 ; *Moore* v. *Metropolitan Bank*, 55 N. Y. 41.

If the mortgage in the present case had been made directly from Cecil R. Atkinson to the appellant no question could be made by Atkinson's creditors as to the appellant's lien upon the mortgaged property to the extent of the money advanced *bona fide* upon the faith of the property at the time the mortgage was made.    When, therefore, Atkinson clothed Steers with the appearance of a good mortgage title of record to the property, for the purpose of enabling him to raise money upon the mortgage, and the appellant, relying upon this appearance of good title in Steers, after a careful examination of the public records and a failure to find any prior incumbrances upon the property, parted with its money in good faith, it is entitled to the favor of a Court of Equity in the consideration of the relative equities of the parties to the controversy.    This Court in *Seldner* v. *McCreery*, 75 Md. 296, said, " where title is perfect on its face and no known circumstances exist to impeach it, or put a purchaser on inquiry, one who buys *bona fide* and for value, occupies one of the most highly favored positions in the law."

. The appellant did not trust to the personal responsibility of the mortgagor but lent its money upon the faith of the particular property covered by the mortgage and required an assignment of the mortgage at the time of so doing.    On the contrary the appellees. trusted to the mortgagor or to such other collaterals as he lodged with them, and the ap-

pellee Gordon, although he knew when he lent his money
that Cecil R. Atkinson owned the Howard street ware-
house, did not insist upon having a lien on it for his loan,
but deliberately relied,so far as the warehouse was concerned,
upon his rights as an ordinary creditor of its owner.    The
equities of the appellant are at least equal to those of the
appellees and having the legal title to the warehouse it has
the stronger claim thereon, under the familiar principle that
where equities are equal the legal title must prevail.  *Pome-
roys' Equity,* 417; *Wait on Fraud. Conv.,* 370; *Townsend* v.
*Little,* 109 U. S. 512; *Black* v. *Cord,* 2 H. & G. 103; *Bas-
sett* v. *Nosworthy,* 2 Lead. Cases in Equity, 4th Am. Ed. 1.

In *Dyson* v. *Simmons,* 48 Md. 214, it was held, upon the
authority of many cases there cited, that if a party makes
or affects to make a mortgage, which proves to be defective
by reason of some informality or omission even on the part
of the mortgagee himself, the conscience of the mortgagor
is bound, and equity will recognize and enforce the lien of
the defective mortgage and give it precedence over the sub-
sisting creditors of the mortgagor and also over judgments
obtained against him after the date of the mortgage.    Gen-
eral creditors have no lien on the property of the debtor,
and a judgment is only a general lien and is for that reason
subordinate to the prior specific equitable lien of such a de-
fective mortgage.    The case at bar does not come directly
within the principle asserted in the last mentioned case but
it is certainly one in which by reason of its peculiar facts
the conscience of the mortgagor was especially bound to the
appellant and we think that the same course of reasoning
might well be applied, within proper limits, to the appellant's
protection.

This Court has frequently been called upon to assert and
define the rights of the creditors of a grantor as against a
conveyance made by him which, by reason of inadequacy
or want of consideration or even by design, operated to
hinder, delay or defraud them.   The Court has not hesitated
to strike down such conveyances at the suit of the cred-

itor, holding that one cannot make a voluntary conveyance of his property as against the rights of subsisting creditors,nor can he, as against such creditors, sell it for a consideration that bears no adequate relation to its real value. When, however, in such cases the rights of the parties, even if they were the immediate grantees under the conveyance, who had in good faith parted with value in reliance upon the conveyance, have had to be measured against those of the creditors, it has uniformly been held that in order to do full justice to all the parties in such cases a Court of Equity in setting aside the deed will allow it to stand as security for the consideration actually paid and apply the balance to the payment of the vendor's debts. These propositions were distinctly upheld in the cases already cited of *Cone* v. *Cross, Hull* v. *Deering, Hinkle* v. *Wilson* and *Worthington* v. *Bullitt.*

We regard the principle of the last mentioned cases, in none of which was the position of the party claiming under the conveyance strengthened by any element of negotiability in the subject-matter of the thing assigned to him, as properly applicable to the one at bar. The mortgaged property should be sold and the proceeds of sale, after deducting proper expenses, applied first to the payment of the $5,000 lent by the appellant to Steers with interest thereon, and then to the payment of the creditors of Cecil R. Atkinson, the mortgagor, who have come or may come into the case, according to their legal priorities.

We do not mean by this decision to disturb the authority of the *Cumberland Coal & Iron Co.'s case* upon which the learned Judge below mainly relied in changing his opinion, nor that of *Copeland's case.* In each of these cases the issue on trial was between the *owner of property* who had been fraudulently induced to execute a mortgage upon it, and an assignee of the fraudulent mortgage and they were both cases of flagrant fraud in fact. The rights of the *creditors* of the grantor were not in issue in either case. In *Cumberland Coal & Iron Co.'s case* the Court asserted the

proposition that the transfer of a mortgage is so far within the rule which applies to *choses in action* that when the assignment is made without the concurrence of the mortgagor, as in that case, the assignee takes subject to the same equities and defences to which the assignor was liable.   We do not, however, understand the Court by what was said in that opinion to intimate that when the equities in behalf of the *creditors* of the mortgagor in such a case came to be asserted, their claims would be enforced without regard to the proposition, so frequently upheld by this Court in setting asside fraudulent conveyances at the suit of the *creditors* of the grantor, that in order to do justice to all parties in such cases the conveyance will be allowed to stand as security for the consideration actually paid on the faith of it by the party holding the legal title under it.

> *Decree reversed and cause remanded for further proceedings in accordance with this opinion.*

(Decided January 10th, 1900).