DOLLAR CLEANSERS AND DYERS, INC. *v.*
ROBERT J. McGREGOR, Receiver.

[No. 20, April Term, 1932.]

106

*Decided June 20th, 1932.*

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Samuel Carliner,* with whom was *J. Purdon Wright* on the brief, for the appellant.

*George Farber,* for the appellee.

ADKINS, J., delivered the opinion of the Court.

Edward E. Kaplan owned and operated a dry cleaning establishment, and did business under the name of the Dollar Dry Cleaning Company. The office and plant were located at No. 1400 Rice Street and Nos. 708-710-712 North Calhoun Street adjoining. In the summer of 1929 he formed a corporation under the name of the Dollar Dry Cleaning Company, Incorporated, with a view of transferring to it the plant and business. The three original directors resigned at the first meeting of the board, and Edward E. Kaplan, Rose Kaplan (wife of Edward E.), and Isidore Miller (brother-in-law of Kaplan) were elected directors to succeed them. Edward E. Kaplan was elected president, Isidore Miller vice-president, and Rose Kaplan secretary. The only

stock ever issued was twenty-five shares of preferred and twenty-five of common, par value $100 each, to Edward E. Kaplan. A resolution was passed by the corporation to purchase from Edward E. Kaplan the business, including property No. 1400 Rice Street, "subject to the mortgage now existing thereon," together with all the goods, wares, merchandise, trucks, equipment, fixtures, chattels, and good will of the Dollar Dry Cleaning Company, said assets to be transferred on the payment to Kaplan of $5,000 in cash and on the execution of a chattel mortgage for the sum of $45,000 payable on or before September 8th, 1930. "The said assets to be more accurately determined by an inventory check to be made by Phillip W. Cheslock, C. P. A."

For the cash payment of $5,000, twenty-five shares of preferred stock and twenty-five shares of common stock were issued to Kaplan on August 6th, 1929, and on September 9th, 1929, the mortgage to Kaplan for $45,000 was executed by the corporation to Edward E. Kaplan, president, acknowledged by him as president, and duly recorded.

On December 12th, 1930, a resolution was passed by the board to purchase leasehold properties Nos. 708-710-712 North Calhoun Street, Baltimore, and to execute a mortgage on No. 1400 Rice Street and the Calhoun Street properties and all the personal property and chattels of the corporation to Eleazer Winakur to secure a loan from him to the corporation of $7,500. It does not appear from the record, but is explained in the brief of appellee, that this mortgage to Winakur, although subsequent in date to the mortgage to Kaplan, became a prior lien by a waiver executed by Kaplan to Winakur. It is conceded that Winakur held the prior lien. Under a consent to decree for sale contained in the mortgage to Winakur it was foreclosed, and on August 10th, 1931, Robert J. MacGregor, receiver in bankruptcy for the Dollar Dry Cleaning Company, Incorporated, filed a petition asking that the surplus proceeds of sale be credited to him as receiver, on which an order was passed directing the auditor to make the allowance prayed. On September 1st, 1931, Isidore Miller filed a petition, in which he alleged that he was the

holder by assignment of a second mortgage dated. September 9th, 1929, in the amount of $45,000 from 'said corporation to Kaplan, and was entitled to the surplus proceeds of sale; and prayed that an order be passed directing the auditor to distribute them to him. An order was accordingly passed, subject to the usual exceptions. Exceptions were filed to this order in which it was alleged that the mortgage from the corporation to Kaplan was made in fraud of the creditors of the corporation and that the assignment to Miller was fraudulent. During the progress of the hearing on these exceptions, on the petition of the appellant, Dollar Cleansers and Dyers, Incorporated, alleging that by virtue of assignment it had acquired all rights and interest of Isidore Miller, it was by order of the chancellor substituted in the place and stead of said Miller.

The chancellor found that the said second mortgage was fraudulent in law; that the appellant was not a *bona fide* purchaser for value of said mortgage without notice, and accordingly decreed that the order signed on September 1st, 1931, on the petition of Miller, be rescinded, and the order of August 10th, 1931, on the petition of the receiver, be made absolute; and that the surplus proceeds of sale over and above the balance due under the mortgage of Eleazer Winakur, plus interest and expenses, be allowed the receiver. This appeal is from that decree. We concur in the conclusion of the chancellor.

We are not prepared to hold under the present state of the law in relation to corporations that under no circumstances could a corporation, in which all of the stock was held by one person, make a valid mortgage to that person. The expressions in *Swift v. Smith, Dixon & Co.*, 65 Md. 428, 5 A. 534, which would lead to that conclusion, however correctly they may have stated the law as it then was in this state, cannot now be accepted without qualification, in view of changes that have taken place in our statutes. We said in *Carozza v. Federal Finance Co.*, 149 Md. at page 238, 131 A. 332, 338: "The equitable rule that the form of a corporate entity may be disregarded where the ownership of all of its corporate stock is in one person is not of general appli-

cation, but is commonly limited to those instances in which it becomes necessary to disregard a formal corporate existence to prevent fraud or imposition or to enforce a paramount and superior equity." See, also, *Bethlehem Steel Co. v. Raymond Concrete Pile Co.*, 141 Md. 67, 81, 118 A. 279.

One of the purposes of the liberalization of the corporation laws of this state was to make it more practicable for an ordinary business to be conducted in the form of a corporation without the hazard of personal responsibility beyond the risk of the assets of the business. It is quite understandable that one would be willing to risk the loss of a definite amount invested in a business enterprise, while unwilling to stake his entire fortune on the success of such venture. So long as the corporate plan is adopted and pursued in good faith and in accordance with the registration and other laws of the state, those dealing with the corporation have only themselves to blame if they suffer from neglect to seek information obtainable from public records and other available sources. And it is not apparent why the substantial or even the sole owner of the stock may not lend to the corporate entity on the security of a mortgage of the corporate assets, provided the money lent is a *bona fide* loan for corporate purposes. Such a transaction, we think, is not invalid as a matter of law. But its *bona fides* is always open to inquiry. This court does not think the law contemplates that one may incorporate an established business of his own, continue to own and control it as before, and at the same time, for his personal benefit, put beyond the reach of prospective creditors all the assets of the corporation. *Folson v. Detrick Fertilizer Co.*, 85 Md. 52, 36 A. 446.

And that was what was attempted in this case. There can be no reasonable doubt that Kaplan knew the business could not be run without either money or credit. The record shows that there was no money paid in. The entire capital stock was issued to Kaplan ostensibly in part payment for the plant. Hence it must have been contemplated that credit would be necessary for the prosecution of the business.

We are satisfied from the evidence in the record that the property turned over to the corporation was grossly overvalued; that the mortgage was in excess of the true value of said property; and that in taking the mortgage Kaplan knew he was leaving no assets with the corporation as a basis for the credit which he must have intended to seek.

"If a voluntary conveyance is made with a view or expectation of becoming subsequently indebted, and in accordance with such view or expectation debts are contracted, those who thus become creditors may avoid the deed, although their claims had not, at its date, even a contingent existence." *Williams v. Banks,* 11 Md. 198; Code art. 39B, sec. 6; *Folsom v. Detrick Fertilizer Co.,* 85 Md. 52, 36 A. 446. See, also, *Mundy v. Jacques,* 116 Md. 11, 81 A. 289, 291, where it was said: "The law will not permit a president of a corporation to thus take over all of its property to the prejudice of creditors," and that as against creditors a transfer of property must be *bona fide* as well as for value.

Our conclusion is that the mortgage was invalid in the hands of the mortgagee as against creditors.

But it is strongly urged by appellant that it has a good title to the mortgage, having purchased it from an assignee who had a good title, because he purchased it in good faith, for value, and without notice of the alleged equities of creditors. It is conceded that appellant had notice at the time the assignment was made to it, and took only such title as its assignor then held.

Isidor Miller, appellant's assignor, took from Kaplan an assignment of Kaplan's mortgage on the same day he (Miller) bid in the mortgaged property at the foreclosure sale under a prior mortgage, and after the sale. The evident purpose of this transaction was to enable Miller to absorb with this second mortgage whatever surplus there was over the first mortgage and costs. It is difficult to escape the conclusion that this was a scheme arranged between Kaplan and Miller. Miller and Kaplan married sisters. Miller on August 1st, 1929, soon after the business of Kaplan was incorporated, was elected a director and vice-president, and the minutes of

the meeting kept by Mrs. Kaplan, as secretary, show that Miller was present at this meeting. He testifies, however, that he was not present at this meeting and that he never knew he was a director and vice-president until he was informed by his counsel in September, 1931, during the taking of testimony in this case. It is difficult to credit this story in view of the intimacy between the parties. At any rate, he knew that Kaplan's company was in bankruptcy at the time he took an assignment of the mortgage held by Kaplan. Miller's testimony is that this assignment was the result of a conference with his counsel, in which Miller told counsel of the bankruptcy, and of Kaplan's indebtedness to him, and asked if he could accept an assignment of the mortgage to secure the indebtedness. The alleged indebtedness consisted of several loans which Miller told counsel he had made to Kaplan, and, supposing the loans to have been made by Miller in his personal capacity, counsel advised that the assignment be made to him. In the course of the trial, when the checks alleged to represent these loans were offered in evidence, it developed that these checks were checks of appellant, whose entire stock was owned by Miller and his wife, and on this showing counsel had Miller assign the mortgage to appellant, which by order of court was substituted as petitioner in lieu of Miller. The loans amounted in all to $6,700. We are satisfied from the evidence that Miller knew the money advanced by him to Kaplan was for the corporate business, even if not loans directly to the corporation. Past loans to the corporation could hardly be taken as valid consideration for the assignment of a mortgage held by Kaplan personally. But it is not necessary to decide that question. If it be assumed that there was an outstanding indebtedness from Kaplan to Miller, or to Miller's corporation, the appellant, amounting to $6,700, and that the assignment by Kaplan of the mortgage was to secure that indebtedness, neither Miller nor the appellant would be a purchaser for value within the principle of the decision in *Economy Savings Bank v. Gordon,* 90 Md. 486, 504, 45 A. 176, 179, relied on by appellant. In that case the purchaser of an invalid re-

corded mortgage was protected because it not only bought in good faith, but it "parted with its money in good faith," relying upon the appearance of good title in the mortgage. In the present case there was no parting with money or things of value in consideration of the assignment. It was taken as security for a past indebtedness and not in payment of such indebtedness. The assignee did nothing by which its position was varied for the worse. In *Stieff v. Wilson*, 151 Md. at page 601, 135 A. 407, 409, it is said: "All the cases have agreed that, for a purchaser to be protected against an intervening equity * * * 'it must at least appear that he did some act on the faith of the sale, by which his position was varied for the worse and which cannot be retracted.' 2 *White & Tudor, Lead. Cas. in Equity* (4th Am. Ed.), 82, 83; note, L. R. A. 1918C, 438. * * *" In *Stieff v. Wilson, supra,* the purchaser was protected because an antecedent debt was extinguished, citing *Busey v. Reese,* 38 Md. 264; *Comegys v. Clarke,* 44 Md. 108; *Christopher v. Christopher,* 64 Md. 583, 3 A. 296. The case of *Busey v. Reese, supra,* distinguishes between cases where the debt which was the consideration is extinguished and where it is not.

We hold that neither Miller nor the appellant was a purchaser for value, and that they took the mortgage subject to all the infirmities to which it was subject in the hands of the mortgagee.

It follows that the decree appealed from must be affirmed.

As we do not rest our decision upon a finding that the vesting of all the stock in Kaplan suspended the corporate existence of the corporation, or that the mortgage was thereby affected, the ruling of the chancellor upon the offer to show there was an intention to distribute the stock becomes unimportant.

<em>Decree affirmed, with costs to appellee.</em>

Note.—The opinion in this case is that of a majority of the court, with which the writer does not entirely agree. He agrees, however, that the assignees of the mortgage took no better title than that of the mortgagee.