OBRE *v.* ALBAN TRACTOR COMPANY ET AL.

[No. 185, September Term, 1961.]

292

*Decided April 11, 1962.*

The cause was argued before HENDERSON, PRESCOTT, HORNEY, MARBURY and SYBERT, JJ.

*L. Robert Evans,* for appellant.

*Robert F. Hochwarth,* with whom were *Louis J. Sagner, Francis B. Burch* and *Frank, Bernstein, Gutberlet & Conaway* on the brief, for appellees.

SYBERT, J., delivered the opinion of the Court.

The single question raised by this appeal is whether the Chancellor erred in his finding that a note of a corporation to its principal stockholder represented a risk capital investment in the corporation and not a bona fide debt entitling the stockholder to share as a general creditor in distribution of the corporation's assets due to insolvency.

The Annel Corporation began its existence in January, 1959, when the appellant, Henry Obre, and F. Stevens Nelson pooled certain equipment and cash for the purpose of forming the

corporation to engage in the dirt moving and road building business. As his share, Obre transferred to the corporation equipment independently appraised at $63,874.86, plus $1,673.24 cash, for a total of $65,548.10. Nelson's contribution was equipment valued at $8,495.00 and $1,505.00 in cash, totaling $10,000.00.

In return, Obre received $20,000.00 par value non-voting preferred stock and $10,000.00 par value voting common stock. In addition, he received the corporation's unsecured note for $35,548.10, dated January 2, 1959, which was the date of the incorporation. The note, which is the subject of this appeal, was made payable five years after date and carried interest at the rate of five per cent per annum, though no interest was ever actually paid. Nelson received for his contribution voting common stock of $10,000.00 par value.

The corporation, with Obre as president and Nelson as vice-president, experienced financial difficulty very soon after beginning its operations, requiring Obre to pay certain creditors and meet a payroll in March, 1959, by use of his own funds. For the same reason he discontinued taking his salary of $75.00 a week in May, 1959. In April, 1959, the corporation borrowed $27,079.20 from a bank, securing the loan with a chattel mortgage. During its period of operation the corporation prepared monthly financial reports in which Obre's note was listed as a debt of the corporation. In 1959 the corporation showed an operating loss of $14,324.67. Its continued lack of success led to the execution of a deed of trust for the benefit of creditors on October 19, 1960, and the Circuit Court for Baltimore County, sitting in equity, assumed jurisdiction of the trust.

Obre filed four separate claims in the case which were excepted to by Alban Tractor Co. and certain other trade creditors (appellees here). The Chancellor, after hearing, issued a decree sustaining the exceptions to Obre's claim on the note in question, on the ground that the note represented a contribution to the capital of the corporation and not a bona fide debt owed to Obre upon which he could share as a general creditor. The Chancellor based his decision on his finding that the corporation could not have carried on its operations

without the equipment contributed by Obre. He felt that the fact that the note was given on the same day the corporation was formed, and that it was a five year note, indicated that the transaction was not a loan but was really a risk capital contribution. He held that, in view of these factors, equity required that the claim be subordinated to the claims of the general creditors. Under the circumstances of this case we are unable to agree with the conclusion of the Chancellor.

A loan to a corporate entity by a substantial or even the sole owner of stock is not *per se* invalid, although such a transaction is always open to inquiry. *Coffman v. Publishing Co.,* 167 Md. 275, 173 Atl. 248 (1934); *Dollar Cleansers v. McGregor,* 163 Md. 105, 161 Atl. 159 (1932). In *Hock & Co. v. Strohm,* 166 Md. 253, 255, 170 Atl. 738 (1934), where this Court refused to subordinate loans made at intervals by a stockholder to a corporation in which she owned the dominant interest, it was said:

> "* * * In the absence of any element of fraud or imposition or of a subordinating equity, such a loan is recoverable to the same extent as if made to the corporation by any other lender."

See also 13 Fletcher, *Cyc. Corp.* (Rev. Vol.), § 5756.

It is significant in this case that no element of fraud, misrepresentation or estoppel was alleged in regard to the execution of the note, or the fact that it was held out as being a loan and not a capital investment. This factor distinguishes the case at bar from two Maryland cases in this area, *Cantor. v. Balto. Overall Mfg. Co.,* 121 Md. 65, 87 Atl. 1115 (1913), and *Dollar Cleansers v. McGregor, supra,* where claims by a stockholder-creditor were subordinated because of substantial fraud or misrepresentation. However, appellees contend that they have shown a "subordinating equity" in that the corporation, in which Obre was a dominant stockholder, was an undercapitalized venture, and that where such a situation exists, fraud or mismanagement need not be present in order to subordinate the claims of the principal stockholders. The test in such a case, it is argued, is whether the transaction can be justified within the bounds of reason and fairness. There is,

principally in bankruptcy cases, some authority indicating support for this argument. See, for example, *Costello v. Fazio,* 256 F. 2d 903 (C. A. 9, 1958); *L & M Realty Corporation v. Leo,* 249 F. 2d 668 (C. A. 4, 1957). However, even if we assume, without deciding, that there may be situations in which the doctrine of subordination would be applied in a case short of fraud or estoppel, on general equitable principles, we do not believe that the facts present such a case here.

It is noted that in drawing up their corporate plan Obre and Nelson were assisted by a well-known and reputable firm of certified public accountants. Because of the expressed desire of Obre and Nelson that their control of the corporation be equal from the outset, and their ownership eventually equal, the corporate structure had to be planned carefully. Since Obre's contribution in the way of equipment was substantially greater than that of Nelson, the stock was issued so that each received an equal amount of common voting stock, but additional preferred stock was issued to Obre with the condition that it should have voting power if and when it became necessary to pass the dividend on the preferred stock. The remaining excess of assets brought in by Obre, over and above the stock issued to him, was not to be considered a capital investment since this would have made the desired end of eventual equal ownership that much more difficult. Hence the note in question was executed for the excess of $35,548.10. The result of this planning was that a permanent equity capital of $40,000 would be invested, which, as was noted in a memorandum of the firm planning the corporate structure, "all parties consider is entirely adequate for the foreseeable needs of the corporation". The note was made payable in five years, instead of in equal annual installments, for the explicit purpose of gaining tax advantage.

In our view, appellees have failed to show that $40,000 was an unreasonable amount of capital upon which to predicate success in the corporate venture. No evidence was offered to reflect the financial status of the corporation other than its authorized capital stock and the fact that it encountered financial difficulties early in its operations and eventually foundered. This, in our view, failed to establish that the financial set-up

of the corporation was a sham, or worked an injustice. As Lattin points out in his treatise on corporations:

> "There are many things that contribute to the financial downfall of a business enterprise, and lack of adequate capital is but one of these. No hard and fast rules have yet been laid down to test the adequacy or inadequacy of the capital of a corporation. Probably no more should be expected of men who start a new enterprise than what reasonably prudent men with a general knowledge of the particular type of business and its hazards would determine was reasonable capitalization in the light of any special circumstances which existed at the time of incorporation of the now defunct enterprise."

*Lattin, Corporations,* Ch. 2, § 5 (a). Cf. *Carlesimo v. Schwebel,* 197 P. 2d 167, 172 (Calif. 1948), and *Ohio Edison Co. v. Warner Coal Corporation,* 72 N. E. 2d 487, 488 (Ohio 1946). There is no showing that $40,000 was inadequate capitalization for an enterprise of this size, particularly in view of the careful planning that went into determining its capital structure. What may appear hazardous by hindsight may not have been unreasonable at the outset. It is not unusual in corporate financing to have approximately one-half of contributions put in as risk capital and the balance as loan capital. There can be no question but that, if a third party had advanced the money represented by Obre's note, he would validly be considered a creditor of the corporation.

Our view in no way compromises the position of the corporate creditor. As this Court stated in *Dollar Cleansers v. McGregor, supra,* (at 109 of 163 Md.):

> "So long as the corporate plan is adopted and pursued in good faith and in accordance with the registration and other laws of the state, those dealing with the corporation have only themselves to blame if they suffer from neglect to seek information obtainable from public records and other available sources."

It is obvious that the creditors in this case could have deter-

mined (if they actually did not do so) the financial status of the corporation by simply inspecting the stock issuance certificate filed with the State Tax Commission, or by requesting financial reports, or by obtaining credit ratings from the sources available. We think the instant case falls within the ambit of our holding in the *Hock* case, *supra,* and that its facts are even more compelling to uphold the validity of the loan by the stockholder, Obre. In the *Hock* case, the advances made by the dominant stockholder were simply entered on the cash book of the corporation, and the fact that they were accepted as loans had to be established by the evidence. In the instant case, the note to Obre was listed on the monthly financial reports of the corporation as a debt of the corporation. In addition, though interest was never actually paid, the fact that there was a provision for payment of interest on the note further establishes its character as a loan and not a risk capital investment. The fact that the note was taken at the time of incorporation is not significant in view of the failure to establish inadequate capitalization of the corporation.

In our opinion there is no basis in fact or law to justify the subordinating of appellant's claim under the note, and the decree must therefore be reversed.

> *Decree reversed; case remanded for further proceedings consistent with this opinion; costs to be paid by appellees.*