# ISIDOR CANTOR

## *vs.*

# THE BALTIMORE OVERALL MANUFACTURING COMPANY.

*Insolvents: firms or corporations; creditors' rights; priority
over partners or stockholders. Subscription
to stock, or loan to the corpora-
tion. Presumptions.*

A stockholder of an insolvent corporation, as such, or partner of an insolvent firm, can not participate in the distribution of the assets until the claims of the undisputed creditors are satisfied.                                                                p. 70

A payment of money to a corporation (in so far as the creditors were concerned), was *held,* to be an addition to its capital stock, and not to be a mere loan to the concern.                        p. 70

To constitute a subscription to stock, an actual subscription is not necessary.                                                                p. 70

A virtual subscription may be inferred from the acts and conduct of the party.                                                                p. 70

*Decided June 24th, 1913.*

Appeal from the Circuit Court of Baltimore City (BOND, J.).

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Jacob M. Moses* and *Arthur L. Jackson,* for the appellant.

*Mason P. Morfit* and *J. H. Mitnick* (with whom were *Willis E. Meyers, S. H. Lauchheimer, C. H. Millikin, Bartlett, Poe, Claggett & Bland,* and *Charles G. Baldwin,* on the brief), for the appellee.

BRISCOE, J., delivered the opinion of the Court.

This controversy arises upon exceptions to an auditor's account distributing the assets of the Baltimore Overall Manufacturing Company, an insolvent corporation and now in the hands of receivers, appointed by the Circuit Court of Baltimore City, to administer and wind up its affairs, under the supervision of that Court.

The auditor in the distribution of the funds in the hands of the receivers allowed the appellant a dividend of $1,419.60 on a promissory note for $3,000, drawn by the company to his order, dated April 25th, 1911, and payable four months after date without interest.

The appellees are general creditors of the company, and filed exceptions to the allowance of this dividend on the alleged claim, and state the following grounds of exceptions:

(1) That the defendant corporation is not now, and never was indebted to the appellant in the sum of three thousand dollars and is not indebted to him in any sum whatever.

(2) That the appellant is a stockholder and not a creditor of the defendant corporation, and is not entitled to participate in the distribution of the assets until all the creditors who have filed claims have been paid in full.

(3) That the appellant is indebted to the defendant corporation.

(4) And for additional reasons state, that the sum of three thousand dollars ($3,000) was by the appellant contributed or paid unto the corporation or into the business conducted and carried on under the name of the Baltimore Overall Manufacturing Company as capital, and he is not entitled to participate in the distribution of the assets of the corporation or of the business conducted under the name of the Baltimore Overall Manufacturing Company until all the creditors who have filed claims are paid in full; and,

(5) That after the sum of three thousand dollars ($3,000) was so contributed or paid in by him as capital he withdrew a part thereof.

By an agreement as to record filed on the 25th of October, 1912, it was agreed, that the exceptions filed by the National Exchange Bank, Pereth Cohen, Collins, Ray & Company, S. Hurwitz, L. Spiegelberg & Sons, W. P. West & Sons, Standard Overall Company, McKenny, Field & Woodman, H. B. Claflin Company, The Thread Agency, and The Farrish-Stafford Company, as shown by the docket entries, are similar to and substantially the same as the exceptions and the additional exceptions filed by T. Martin and Brothers Mfg. Co. and that the claims of all the excepting creditors were duly proved and verified, and all the items on all of said claims are for charges against said corporation for merchandise sold to it after May 2, 1911, except the claim of The National Exchange Bank, which is for money advanced or loaned on a promissory note after this date.

These exceptions to the claim of the appellant were sustained by the Court below, and from the order so passed on the 18th day of July, 1912, this appeal has been taken.

The net balance in the hands of the receivers for the distribution appears to be the sum of $4 431.84 ánd if the appellant is to participate as a general creditor, the dividend of $1,419.60 as allowed by the auditor, will consume nearly one-third of the entire assets of the estate, and the remaining creditors who have filed their claims, will receive on or about 47.31 per cent.

A large mass of testimony was taken in open Court, covering nearly two hundred pages of the record, so we will not review it at length, but state our conclusions, and refer briefly to the facts upon which they rest.

While the evidence is somewhat conflicting and contradictory upon some of the material facts we think, it is sufficient upon the whole record, to sustain the conclusion reached by the lower Court, and its decree must be affirmed.

The questions to be determined are issues of facts, rather than of law, and come to this: Was the three thousand dollars here in controversy contributed by the appellant as an addition to the capital of the company, and to be treated as

such, in so far as the creditors, who have filed their claims in this case, are concerned, or was it a fund so borrowed by, and loaned to the company by the appellant as to constitute him a creditor and entitling him to participate in the distribution of its assets along with the creditors of the company who became such after the obtention of the fund.

It must be borne in mind at the outset that we are dealing with a class of creditors who became such after the 25th of April, 1911, the date of the note, given to the appellant, and it is admitted, that all of the items on all of the claims are for charges against the company for merchandise sold to it after May 2nd, 1911, except the claim of the National Exchange Bank, which is for money advanced or loaned on a promissory note after that date.

The undisputed evidence shows, that on the 27th day of April, 1911, Pelzerman, the president of the company, M. Wilenzig its secretary and treasurer, and the appellant himself, must have considered the fund as an addition to capital, because they subsequently obtained credit upon representations to this effect.

The fund was deposited in the company's bank account, and on the same day, letters were mailed to the company's creditors by the appellant, and the other members of the company to the effect, that "We have this day paid in additional capital in cash $3.000. Reference, National Exchange Bank of Baltimore." Signed Baltimore Overall Mfg. Company.

The business of the company was conducted entirely by Pelzerman, Wilenzig and the appellant, as the acting managers and directors of the company from April 27th, 1911, until a short while before the receivers were appointed.

On the 30th of June, 1911, a statement was sent to the American Woolen Company of New York, as a basis for credit, and the following item under the head of assets appears April 27, 1911, "Additional cash $3 000"—Total assets $13,000. There was no entry of "Liabilities" upon this statement.

The witness Hurwitz testified that the appellant stated to him "He was in the business with the company" and that a check which had been given by the company "would be all right in a few days."

The witnesses Fried and Kalick testified that the appellant in the summer of 1911 employed them to do work for the company, and introduced Pelzerman to them as his partner, and stated that "he went with him in business," with the Baltimore Overall Manufacturing Company.

The character of the business was changed upon the suggestion and demand of the appellant, and the manufacture of "high grade pants" was added to the business. The goods for the manufacture of the pants were bought by the appellant, in the name of the company; they were manufactured at its plant in Baltimore, and were sold by the company, in the usual course of its business. A large part of the stock on hand, at the date of the appointment of the receivers and from which the fund for distribution among the creditors was derived, consisted of these high-grade pants.

The testimony also shows, that the appellant received twenty dollars a week out of the business, the same amount that was drawn by Pelzerman and Wilenzig, the other two managers, and stockholders of the company.

The witness Pelzerman testified that there was to be a division of the profits in equal shares and that the appellant was to participate in a share of the profits.

While the appellant denies the ownership of any interest in the company, it will be seen that his testimony is directly contradicted by Wilzenzig, Pelzerman and other witnesses upon the material facts of the case.

The conduct of the appellant in the whole transaction, we think, is absolutely inconsistent with that of a *bona fide* creditor, and he is clearly estopped from asserting a claim in competition with the creditors of the company, on the record now before us. *Thomas v. Green,* 30 Md. 1; *Fletcher v. Pullen,* 70 Md. 205.

While the witnesses in the case use the terms, "the business," "holding shares," "partners" and "partnership" when in fact they meant "corporation" and "stockholders" cannot affect the conclusion we have reached.

In *Pott & Co.* v. *Schmucker*, 84 Md. 552, it is said the law will not in any case suffer the corporate name, the mere shadow, to be interposed for the purpose of defeating substantial rights depending for their ultimate vindication, not upon the accidental form of a transaction, but upon its inherent equity and justice. *Bauernschmidt* v. *Bauernschmidt*, 101 Md. 162; *Seymour* v. *The Spring Forest Cemetery Assoc'n*, 144 N. Y. 340; *Antony* v. *American Glucose Co.*, 146 N. Y. 407.

In *Cook on Corporations*, 5th ed., sec. 317, it is said, Courts have power to ignore corporate existence, when necessary in order to circumvent a fraud.

In the case at bar, we think the proof shows that the three thousand dollars was paid in as an addition to the capital of the company, and must be treated as in the situation of money paid for stock subscribed to, in so far as the creditors upon this record are concerned.

In *Pacific Nat. Bank* v. *Eaton*, 141 U. S. 227, it is said, an actual subscription is not necessary. There may be a virtual subscription, deducible from the acts and conduct of the party. *Sanger* v. *Upton*, 91 U. S. 56; *Griswold* v. *Seligman*, 72 Mo. 110; *Machen on Corporations*, 155-156; 1 *Cook on Corporations*, 250.

It is also well settled as a general rule, upon both principle and authority, that a stockholder of an insolvent corporation, as such, or a partner of an insolvent firm, cannot participate in the distribution of its assets until the claims of undisputed creditors are paid. *Drovers Bank* v. *Roller*, 85 Md. 495; *P. T. George & Co.* v. *Morrison*, 93 Md. 132; *Potts & Co.* v. *Schmucker*, 84 Md. 535.

For the reasons stated, the order of the Court below will be affirmed and the cause remanded, with costs.

*Order affirmed and cause remanded, with costs.*