56 F.2d 744 (1932)
In re BURNET-CLARK, Limited.
IRVING TRUST CO.
v.
MAXWELL et al.
No. 173.
Circuit Court of Appeals, Second Circuit.
March 14, 1932.
*745 Leonard & Walker, of New York City (Walter B. Walker and Thomas G. Prioleau, both of New York City, of counsel), for defendant-appellant Geo. L. Maxwell.
Edwin A. Falk, of New York City (Irving Steinman, of New York City, of counsel), for plaintiff-appellee Irving Trust Co. as trustee in bankruptcy for Burnet-Clark, limited, bankrupt.
Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.
MANTON, Circuit Judge.
The appellee is the trustee in bankruptcy of Burnet-Clark, Limited, a Maryland corporation, and sued its three directors, one of whom is appellant, to recover funds paid out of capital for the purchase of stock of the corporation. The basis of the suit rests on sections 664 and 667 of the New York Penal Law (Consol. Laws N. Y. c. 40), sections 58 and 114 of the Stock Corporation Law (Consol. Laws N. Y. c. 59), and section 60 of the General Corporation Law (Consol. Laws N. Y. c. 23). The appellee claims as successor to the rights of the corporation. The corporation was authorized to do business in New York state by the issuance to it of a certificate of authority. It must thereafter yield obedience to the New York Stock Corporation Law, §§ 58, 114. Section 60 of the General Corporation Law provides that an action may be brought against directors of a corporation to compel them to account for their official conduct, including any neglect of or failure to perform their duties in the management and disposal of corporate funds and property; and "to compel them to pay to the corporation, or to its creditors, any money and the value of any property, which they have acquired to themselves, or transferred to others, * * * by or through any neglect of or failure to perform or other violation of their duties." Section 61 provides that the corporation itself, a creditor, receiver, or trustee in bankruptcy, or director, may maintain the action.
This corporation sold antique furniture and other objects for homes; it also fulfilled decorating contracts. The sole stockholders were the defendants Clark and the appellant. The appellant purchased 400 shares of stock, and thereafter all three were directors and officers. Its capital structure consisted of 1,000 shares of no par value of one class. The defendants Clark owned 500 shares, and, with the appellant's stock, 900 shares in all were issued. In September, 1928, appellant agreed to sell his 400 shares to the corporation for $107 per share. He received therefor $42,800.
By the court's direction, the jury found that the corporation made this purchase. It also found that at least $32,000 of the price paid came from its capital. As to two payments, one for $500, paid out of surplus, and another of $6,300, paid by Mrs. Clark out of her private funds, the court instructed the jury to find that the defendants were not liable.
The sale of this stock was negotiated by the appellant's father while he was out of the country. It is admitted that he had full authority to represent the appellant. This sale is established by letters exchanged. On September 20, 1928, appellant's father wrote to Mr. Clark and referred to a conversation held earlier on behalf of the company in which the offer to sell the stock of his son was made; part of the purchase price was to be paid in cash and part by notes of the company. In reply, on the corporation's letterhead, Mr. Clark accepted the offer to sell. The check given in part payment was the corporation's check. Two notes of the corporation, one for $10,000 and one for $20,000, were also given. On the back of the certificate of stock sold by the appellant, the name of the transferee was left blank. A receipt given by the purchaser expressly stated that the notes and check were received from the corporation. There is little doubt that the documents delivered were evidence of a purchase and sale of the appellant's stock to be paid for by funds of the corporation.
The court charged the jury that the contract of purchase of appellant's stock was made by the corporation and was carried out by it, making the payments in installments. Payments were made as follows: November 10, 1928, $3,000; November 16, 1928, $3,000; February 15, 1929, payment of the corporation's *746 note of $10,000; and April 15, 1929, payment of the Clarks' individual note of $20,000.
The first payment of $3,000, by personal check of Mr. Clark drawn on his personal account, was inclosed with a letter stating that "Mr. Clark hopes to send you the balance due on this payment by November 15." At the bottom of the check were the words, "Payment on George L. Maxwell stock." The second $3,000 payment was also by Mr. Clark's check, which had the notation, "For a/c of Geo. L. Maxwell stock." It appears that two checks, of $3,000 each, dated November 10, 1928, and November 15, 1928, were drawn by the corporation to Mr. Clark, and were deposited in his personal account. His account on the books of the corporation was charged in these amounts.
The payment of February 15, 1929, for $10,000 was made out of corporate funds, as was the payment of $20,000 on April 15, 1929, but on the books of the corporation Mr. Clark was debited with $5,121.64 and Mrs. Clark with the same amount. A notation was made in the cash book, "Maxwell Note. E. B. C. and C. G. V. $10,243.28." The general ledger contained the same entry. After payment of the $20,000 note on April 15, 1929, out of the corporate funds, entries debiting each of the Clarks were made in the general ledger, "April 30 4/15 C 116 10,346.67." In a stock certificate book on stub No. 6 there was written in pencil, "Issued to Mrs. E. B. C." (which are Mrs. Clark's initials), and under the words "From whom transferred" was the following, "G. L. M.," and below, "No. Original Certificate 3 No. Original Shares 400 No. of Shares Transferred 400."
From the foregoing book entries it is argued that a question was presented for the jury as to who purchased the stock from appellant. Appellant was denied the opportunity of arguing this question or having it presented to the jury; also whether or not the contract made by the corporation for the purchase of the stock had been taken over by the defendants Clark. There was no corporation resolution authorizing the purchase of the stock. In September, 1929, after the last note to appellant's order had been paid, an entry was made in the corporation books showing that the 400 shares were held as treasury stock by the corporation. This evidence we think raised an issue as to whether or not the defendants Clark carried out the corporation's contract as their own obligation. The appellant should have been permitted to so argue to the jury. The court expressly stated in its charge that the corporation was the sole purchaser of the stock, and left it to the jury to find how much was paid out of the corporation's funds.
If the Clarks were liable to the corporation by reason of the book entries, showing the defendants to have purchased the stock or as having taken an assignment of the contract from the corporation, their obligations to the corporation would increase the surplus of the corporation accordingly, and the jury could have found, under these circumstances, that the sums of money paid to appellant were not paid out of capital, for the assets would be increased by the amount of the Clarks' obligation. It was error to refuse the appellant an opportunity to present this defense to the jury.
Since there will be a new trial, it becomes necessary to consider the question of what was the capital stock of the corporation at the time of the purchase of the appellant's stock, if it was purchased by the corporation.
The authorized no-par value capital stock of the corporation was to be issued for such consideration as the directors might deem advisable, subject to such limitations and restrictions, if any, as were set forth in the bylaws of the corporation. There was paid for the 500 shares issued to the Clarks $26,425; and there was paid for the 400 shares issued to the appellant $40,000. It was proved that, in addition to the sum paid by the Clarks, the capital was increased so that their stock netted the corporation $50,000, and this was done before appellant made his purchase. This fixed the value of the stock at $100 per share. But it is argued by the appellant that the corporation never re-valued the original 500 shares and that at all times their total valuation was $26,425 or $52.85 per share; that therefore, when the purchase was made by the appellant at $100 a share, it created a surplus, as the stock was then worth $52.85 a share, and the argument is that, when the 900 shares were subscribed for, the capital was $47,565. However the accounts of the company clearly indicate a revaluation at $100 per share. The ledger shows the following: "Nov. 1500 shares $26,425; Aug. 31 Increase Value (Original Issue) $23,575.; 400 shares Maxwell $40,000." It was testified by the auditor that the item of increased value of $23,575 was made up by the cancellation of the indebtedness due to the Clarks for money loaned to the corporation. This sum was carried on the books of the corporation prior to the revaluation, was later canceled and the *747 capital revalued and increased accordingly. Moreover, the financial statements of June 30, 1927, and June 1, 1928, issued by the corporation while the appellant was a stockholder, showed capital stock of $90,000. The corporate income tax return for the fiscal year 1925, under the word "Remarks," contained the following: "Stock no par value. The first issue of 500 shares was for $26,425.00. It was later decided to increase the value to 100.00 per share and the purchaser put in an additional $23,575. which = 50,000.00 or 100.00 a share. 400 shares were issued later for 40,000.00 making the total issue of 900 shares value $90,000.00." On this evidence the capital stock was $90,000.
Although it was a Maryland corporation, since it is licensed to do business in New York and maintains its place of business here, it must conform to the laws of New York, and any breach of the State Corporation Law which affects creditors imposes the same liability on the directors of a foreign corporation as upon a domestic corporation. The purchase of its own stock by a corporation out of the capital funds, so as to deprive creditors of rights, is a violation of section 664 of the Penal Law (Consol. Laws N. Y. c. 40). It is also violative of the directorate duties within subdivision 2, § 60, of the General Corporation Law (Consol. Laws N. Y. c. 23) and the directors of a foreign corporation are liable in an action in this state for their violations. Miller v. Quincy, 179 N. Y. 294, 72 N. E. 116; German-American Co. v. Diehl, 216 N. Y. 57, 109 N. E. 875. In Cantor v. Baltimore Overall Mfg. Co., 121 Md. 65, 87 A. 1115, the appellant assisted in the management of a company and drew a salary. He paid $3,000 into the firm. This was deposited in the company's bank account and immediately letters were sent to creditors to the effect that additional capital of $3,000 had gone into the business. A credit statement included this sum under assets and not under liabilities. When insolvency occurred, the appellant made claim as a creditor and contended that the payment was a loan. The court held that the sum was paid in as capital and must be treated as money paid for stock subscribed to, as far as the creditors were concerned. Where stockholders released claims against a corporation by selling their stock to a third party and took notes for the debt, they could not later disavow the transaction and claim as creditors. Lawton v. Dargan, 238 F. 303 (C. C. A. 4).
This corporation treated the stock value at $100 per share in its financial statement and in its return for income tax purposes.
The judgment is reversed because of the error referred to, and a new trial ordered.